FLOYD SMITH, *et al. v.* BILL SELLS, *et al.**

(*Nashville.*   December Term, 1927.)

Opinion filed March 3, 1928.

## 1. PUBLIC OFFICES.  ABOLITION.

While the Legislature may adopt a new system of government for a municipal corporation or for such institutions or agencies of the State as are not protected by the Constitution, and may abolish the old plan and the offices created for the administration of the old plan, the change in form of government must be real and not colorable, for the purpose of putting one set of men out of office and another set in office.  (Post, p. 540.)

Citing: House v. Creveling, 147 Tenn. (20 Thomp.), 589; Private Acts 1927, chapter 396.

## 2. PUBLIC OFFICES.  ABOLITION.

An Act of the Legislature which provides that a board of public school directors shall perform all the duties and exercise all of the powers of the former County Board of Education "not in conflict with the provisions of this Act," and where the number of members of said Board is reduced from seven to five, three of the members of the original Board being named in the Act to serve on the new Board, and where the compensation of the members is reduced, and which contains other minor changes, it is obvious that the system is identical under each of the two Acts and cannot have the effect of changing the nature or identity of the offices of the members, said Act is therefore unconstitutional and void. (Post, p. 542.)

Private Acts 1927, chapter 396.

*Headnote 1. Constitutional Law, 12 C. J., section 898; Schools and School Districts, 35 Cyc., p. 859.

FROM PICKETT.

APPEAL from the Chancery Court of Pickett County.—
HON. W. R. OFFICER, Chancellor.

TURNER & CULLOM, A. F. OFFICER and E. D. WHITE, for
complainant.

E. C. KNIGHT and O. K. HOLLADAY, for defendants.

MR. JUSTICE SWIGGART delivered the opinion of the
Court.

Private Acts of 1927, chapter 396, abolished the County
Board of Education in Pickett County and substituted
therefor a County Board of Public School Directors, con-
sisting of five members. The Act named five citizens as
constituting the first Board of Public School Directors,
including three of the seven members of the Board of
Education serving at the date the Act was enacted.

The bill in this cause was filed by the four members
of the County Board of Education, deprived of their of-
fice by the new statute, charging, among other things,
that the act is unconstitutional because only a colorable
effort to legislate them out of office.

(1) The test by which this contention must be meas-
ured, has been developed in several opinions of this court,
reviewed in *House* v. *Creveling*, 147 Tenn., 589, where the
rule is stated as follows:

". . . it is now settled law in Tennessee that the
Legislature may adopt a new system of government for a
municipal corporation or for such institutions or agen-
cies of the State as are not protected by the Constitution,
and to this end the Legislature may abolish the old plan
and the offices created for the administration of the old

plan in whole or in part. The rights of officers thus affected must give way to what the Legislature conceives to be the public interest. This, of course, assumes the change in form of government to be real, and not colorable, for the purpose of putting one set of men out of office and another set in office.''

By section 8 of the Act of 1927, it is expressly provided that the Board of Public School Directors shall perform all the duties and exercise all the powers of the former County Board of Education, ''not in conflict with the provisions of this act.''

The caption of the act describes it as creating the County Board of Public School Directors, defining the qualifications, powers and duties of the members, and providing for their election and compensation.

We have carefully examined and compared the detailed provisions of this act, and of those provisions of the General Education Act, chapter 115 of the Public Acts of 1925, which pertain to the County Board of Education; and we are not able to find any substantial difference in the form of government of the county schools in the one act from that prescribed by the other. The only points of difference which we can find are that the membership of the County Board is reduced from seven to five; the county superintendent is required to act as secretary without additional compensation, while, under the general law, he may be allowed compensation by the board for his services as secretary. The general law authorizes the county court to pay a *per diem* up to $4 to the members of the County Board, while the Act of 1927 fixes their compensation at $2.50 per day, limited to twelve days per year, with the limit extended to forty days in the case of the chairman. Under each statute the chair-

man and county superintendent constitute the executive committee, with the real control of the schools, subject to the action of the entire board, and charged with the duty of making a written report of their actions, to be entered on the minutes of the board. Under the general act the executive committee is required to meet as often as necessary, while, under the Act of 1927, the committee is required to meet twice a month. Under each act the board is required to elect a chairman from the members. Under the general act the chairman is required to countersign all warrants, while the superintendent is required to keep a record of receipts and disbursements, and to be present at the periodical settlements of the trustee with the county. Under the Act of 1927, all these duties are imposed upon the chairman.

Under each act the members of the board are required to take an oath of office, but a bond for the faithful discharge of duties is required only under the Act of 1927.

*(2)* It seems obvious to us that the system of government and control of the county schools is identical under each of the two statutes. The differences are confined to mere matters of detail, and cannot have the effect of changing the nature or identity of the office of members of the County Board of Education.

If the intention of the Legislature had been to accomplish a reform by reducing the number of the members of the County Board of Education from seven to five, this could have been most easily accomplished by abolishing the office of two members of the existing board, leaving the other five members in office. There was no necessity for the removal of four members of the County Board to accomplish this reform in the mode or system of school control, and no reason is suggested in the

briefs of counsel for the removal of four members in order to accomplish a reduction of only two members.

The changes made being only colorable, we think the purpose of the act is manifestly the removal or legislation out of office of four members of the County Board of Education of a single county; and this being true, the act falls within the condemnation of the authorities cited hereinabove.

We agree with the Chancellor in his conclusion that the Act of 1927 is unconstitutional and void, for the reasons stated, and his decree will be affirmed.