BLACK *et al. v.* WILSON *et al.*

(*Jackson;* April Term, 1945.)

Opinion filed June 30, 1945.

624

W. P. Moss, of Jackson, for complainant.

E. J. Harris, of Bolivar, for defendant.

Mr. Justice Chambliss delivered the opinion of the Court.

This suit was brought by seven of eight road commissioners of Hardeman County, elected in August, 1944, for two years, challenging the constitutionality of Chapter 539, Private Acts of 1945, under which the defendants claim to have succeeded to these offices. On the hearing the case was submitted on a single issue, whether the Act of 1945 was effective to abolish the offices held by complainants below, as an incident of substantial and fundamental changes in the county road law, or was merely a colorable enactment having for its purpose the removal of complainants from office and the substitution of others. The chancellor sustained a demurrer and dismissed the bill. This appeal is from his decree.

As we have before remarked, "Each case of the general character now before us stands or falls on its own facts." *Holland* v. *Parker,* 159 Tenn. 306, 307, 17 S. W. (2d) 926, quoted in *Kyle* v. *Marcom,* 181 Tenn. 57, 178 S. W. (2d) 618. It, therefore, becomes necessary to scrutinize the enactment as applied to its statutory background.

Since the year 1927 the control of the highways in Hardeman County had been in the hands of commissioners varying in number, chosen sometimes by the county court and sometimes by popular vote, and with their duties differing in some details, all according to the provisions of the several acts and amendments thereto adopted by the legislature from time to time. The last amendatory act before passage of the measure now under consideration was that of 1941, which fixed the number of road commissioners at eight, one for each of the several road districts of like number created by the act.

Here we quote from the opinion filed by the Chancellor this clear and concise statement of his views:

"Among the changes which the 1945 Act makes in what the Court conceives to be the pre-existing law are, (1) it gives the Commission the right to employ a secretary and an attorney; (2) it gives the Commission, rather than the County Court, the right to fill vacancies in the Commission; (3) the Commission is given control of all road funds; (4) the Commission is given the exclusive right to purchase materials, machinery, etc., and required to advertise for bids on all purchases in excess of $300.00; (5) it fixes the compensation of the Commissioners; (6) it reduces the number of districts and the number of Commissioners from eight to three; and (7) it creates the office of Road Supervisor, provides for his employment and outlines his duties and responsibilities.

"Some of these changes, taken singly, are certainly minor and insignificant, and rise no higher than the status of 'colorable.' However, taken as a whole, the Court is reluctant to say that the change is only 'colorable.' Reduction of the number of districts and the number of Commissioners, coupled with the creation of the office of road supervisor and the centralization of authority in-

cident to these and other changes made by the Act, indicate a revision of the law designed to bring about a more cohesive and unified organization for the maintenance of the road system of Hardeman County. Recognizing the duty of courts to resolve doubts in favor of the constitutionality of legislative acts, the Court is of the opinion that the 1945 Act substantially changes the road law of Hardeman County. It follows that the demurrer of the defendants will be sustained and the complainants' bill dismissed at their cost."

The able solicitor for complainants rightly concludes that the chancellor's decision was influenced mainly by the new provision creating the office of Road Supervisor to which office the active direction of the entire road work of the county was delegated, thus centralizing and consolidating the management of all roads and bridges in and under a single operative head.

This view of the chancellor finds support in the opinion of Mr. Justice Cook in *Butler* v. *M'cMahan,* 166 Tenn. 511, 64 S. W. (2d) 1, in which the act there under review was upheld mainly on the ground that the change in the existing law by which a road superintendent was substituted for a commission, "in effect," (as we commented in *Traywick* v. *Gilkey,* 167 Tenn. 465, 467, 71 S. W. (2d) 676, 677) "a change from a commission to a managerial form of government." We held that such a change was not "merely colorable," but substantial.

In *Butler* v. *McMahan, supra,* 166 Tenn., page 513, 64 S. W. (2d) 1, 2, it was said that "the caption expresses the purpose to set up a new and complete system . . . under the control and direction of a county road superintendent, instead of three commissioners of highways." It is true that in that case no commission was provided for; while here we have a commission of three by whom

the supervisor is chosen, under whose general supervision he works and to whom he is accountable. However, this is consistent with the now well established and widely adopted managerial form of government, provided by our legislature for a number of counties and municipalities in this state. It is common to create, or retain, general governing councils or boards, or commissions, with the duty of choosing managers or superintendents and supervising generally the performance of their duties. But changes to this form of administration of the business of these governmental agencies are generally regarded as substantial, if not radical. There is an important principle of administrative operative control involved.

The caption of the Act of 1945, now before us, reads: "An Act to provide a system for the supervision and management of the construction and maintenance of County Roads, Bridges and Highways in Hardeman County, and to repeal Chapter 544, Private Acts of 1939, and Chapter 313, Private Acts of 1941, creating road systems for said County."

This is a broad and comprehensive caption indicating a purpose to create a complete system of supervision and management for the roads of Hardeman County. It is significant that the Priv. Act of 1941, chap. 313, under which complainants held office, provided for the election of a road commissioner from each of the several districts, and assigned to each of these commissioners the duties incident to their several districts. Each of them was required to make his separate report to the county judge monthly. All funds were to be allocated to the districts and commissioners separately. No joint control or responsibility is provided for. On the other hand, the Act of 1945 creates a "County Highway Commission." Section 2 reads: "That there is hereby created

a County Highway Commission of Hardeman County, and there is also created the office of County Road Supervisor of Hardeman County.'' Throughout the new act, in sharp contrast to the old, it is the ''Highway Commission,'' as a unit of control, which is recognized, with power to act as a joint body, rather than individual commissioners with separate jurisdictional control of the several districts from which they were elected. Many recitals of the old act make clear this difference, which is distinctive in principle. Instead of distinct separate district control by the several commissioners, eight in number, over the roads and funds separately allocated to the several districts, the new act consolidates and unifies the districts, the road funds and their expenditure. And this radical change in form of administration is made clearer and more emphatic by the creation of the new office of Road Supervisor and the conferring upon this new office of the duties and powers enumerated in detail in Section 13 of the act.

It is argued for complainants that the supervisor, appointed by the highway commission for a fixed term of two years and removable only for cause, is ''subject to the general charge and supervision'' of the commission and is not, therefore, an idependent actor. The powers of the commission are supervisory only, while it is made clear that the direct and detail control over the construction and maintenance of the county roads is delegated by the statute to this officer.

The practical effect of the change thus made is important and quite apparently in the interest of more effective and economical administration. As well said by the chancellor, ''the creation of the office of road supervisor and the centralization of authority incident to these and other changes made by the act, indicate a revision

of the law designed to bring about a more cohesive and unified organization for the maintenance of the road system of Hardeman County.''

It is argued for complainants that the holding of this Court in *Traywick* v. *Gilkey, supra,* is in conflict with the conclusion reached by the chancellor. It is true that the changes made by the act then under consideration were found not to be sufficiently substantial to save the act. But the cases are not on all fours. It was there held that the variation between a provision in the new act for supervision of the work by ''foremen,'' selected by the commission, and the former provision for supervision by a ''supervisor'' to be selected in the same manner, was not substantial, or a fundamental change. There was little more than a change in name. In that case there was no change from or to a controlling officer created by statute, with prescribed powers and with no option in the commission to refuse to appoint such an officer. Nor did the new act in the *Traywick Case,* as here, depart from a plan of separate and distinct district control of the roads, under individual supervision by the several commissioners, and adopt a plan of consolidated and unified supervisory control by a commission by and through an officer acting under a mandatory provision of the new law. The cases might be otherwise distinguished, as they differ on their facts in many respects.

The applicable rule of law is now well settled. An office holder may not ''complain, if, in the public interest and by way of putting into effect a new system, the Legislature repeals statutes, the effect of which is to abolish offices not protected by the Constitution.'' * *Goetz* v. *Smith,* 152 Tenn. 451, 462, 278 S. W. 417, 420, citing *House* v. *Creveling,* 147 Tenn. 589, 250 S. W. 357, and other cases. Provided, however, that ''the changes in

the form or structure of the governmental agency affected must be real and substantial, not colorable only." *Traywick* v. *Gilkey, supra,* citing, in addition to those before referred to in this opinion, *Smith* v. *Sells,* 156 Tenn. 539, 3 S. W. (2d) 660; *Haggard* v. *Gallien,* 157 Tenn. 269, 8 S. W. (2d) 364; *Loring* v. *M'cGinness,* 163 Tenn. 543, 44 S. W. (2d) 314; *Powers* v. *Wiseman,* 167 Tenn. 140, 67 S. W. (2d) 142.

■ Conceding, as did the chancellor, that the question is not wholly free from doubt, we concur with and emphasize his view that such doubts under well established rules, should be resolved in favor of, rather than against the constitutionality of an act of the legislature. This rule has special application in cases of this particular character. While in a few of the many cases involving the issue now before us, this Court has felt constrained to hold acts "colorable" only,—a holding which involves in some degree a charge of deceptive purpose,—such a holding will not be announced unless clearly demanded.

For the reasons stated, the decree of the Chancellor is affirmed and the bill dismissed.

PREWITT, J., did not participate in the decision of this cause.