C. R. DORRIER et al., Appellants,

v.

James O. DARK, Appellee.

Supreme Court of Tennessee.

Feb. 17, 1976.

James H. Harris, III, Metropolitan Atty., Dept. of Law of Metropolitan Government of Nashville and Davidson County, Nashville, William F. Howard, Metropolitan Atty., Dept. of Law of Metropolitan Government of Nashville and Davidson County, Nashville, for appellants.

Charles H. Warfield, Farris, Evans & Warfield, William L. Small, Farris, Evans & Warfield, Nashville, for appellee.

OPINION

FONES, Chief Justice.

Written charges of neglect of duty and conduct unbecoming a teacher were preferred against James O. Dark, a tenured teacher, by the Director of Schools. He requested and was granted a hearing before the Metropolitan Board of Education, in accordance with the provisions of T.C.A. § 49–1416, which resulted in a judgment terminating him as a teacher.

Dark sought judicial review of that decision in the Chancery Court of Davidson County pursuant to T.C.A. § 49–1417. In addition to assailing the School Board's decision for lack of merit to the charges, Dark asserted that the Board's action was void because it was "formulated" in a closed session in violation of T.C.A. § 8–4401 et seq., the Open Meetings Act.

Upon a motion by defendants, the nature of which does not appear in the record, the learned Chancellor held that the decision made by the Metropolitan Board of Education at the hearing conducted pursuant to T.C.A. § 49–1416 was void because the "meeting" was in violation of T.C.A. § 8–4401. The order recited that, (1) "upon stipulation of counsel for defendants the Court finds that the Metropolitan Board of Education is 'a governing body' as defined in T.C.A. § 8–4402 and (2) that the Metropolitan Board of Education did meet in executive session to consider testimony concerning plaintiff and reach a decision on plaintiff's termination."

This was in effect a final determination although the Chancellor retained jurisdiction over the Board and the subject matter, for compliance supervision as authorized in T.C.A. § 8–4406(d).

It is necessary that we waive compliance with Rules 14 and 15 of this Court in order to adjudicate the contentions of the Board on the merits. Having exercised our discretion to do so, the issue raised by the appellant Board is that the entire Open Meetings Act is unconstitutional for one or more of the following reasons: (1) the Act is void

for vagueness; (2) the Act abridges free speech; (3) the Act is broader than its caption; and (4) the Act is unreasonable and arbitrary for failure to allow closed meetings under any circumstances. Appellant concludes by urging that elision of a part or parts of the Act cannot save it from the stamp of total unconstitutionality.

Appellant calls our attention to the fact that this Court has heretofore decided only one issue involving the Open Meetings Act. In *Memphis Publishing Company v. City of Memphis,* 513 S.W.2d 511 (Tenn.1974), we held that the phrase "adequate public notice" as used in T.C.A. § 8–4403 was not unconstitutionally vague.

In asserting that the Act is void for vagueness, appellant's brief contends that the Open Meetings Act is replete with undefined terms, that men of common intelligence must necessarily guess at their meaning and differ as to their application. More specifically it is stated that "governing body" and "public body" are imprecise terms, subject to conjecture and will be interpreted differently by the courts of this State until these ambiguous terms are either defined or the Act declared void by this Court. In the meantime, it is asserted, all government action is cast in doubt by the stringent sanction of nullification provided in T.C.A. § 8–4405.

■ Parenthetically, we detect a strong implication that as a result of this appeal we are expected to provide a definition of every term in the Act and give an advisory opinion as to the precise scope and coverage with respect to every conceivable body in existence in the State. We have neither constitutional authority nor inherent power to give advisory opinions. This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts, and a record thereof preserved as prescribed in the statutes and Rules of this Court; and finally, as presented here on proper assignments of error and brief in compliance with the Rules of this Court.

In further argument, appellant asks what are government bodies, governing bodies, governmental bodies and public bodies? Our attention is not directed to any particular body whose status is said to be uncertain and undetermined under the terms of the Act. It is vaguely suggested that there is such confusion rampant across the State resulting from the failure of the Legislature to precisely define these and other terms that members of many bodies do not know whether or not they are covered by the Open Meetings Act.

Appellant is not such a body. We note that the terms are sufficiently clear to enable appellant to stipulate that it is a governing body as defined in T.C.A. § 8–4402. Having no specific issue involving the disputed coverage of a body or bodies we must deal with the application of the Act in the abstract.

Appellant relies upon *Connally v. General Construction Company,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Connally was the Commissioner of Labor for the State of Oklahoma, and the construction company had a number of contracts with the State involving the construction of bridges. The construction company brought a suit to enjoin the commissioner and certain county officers of the State of Oklahoma from enforcing the provisions of a statute on the ground that its was unconstitutionally vague. The statute provided, among other things, that persons employed by contractors performing work for the State must pay, ". . . not less than the current rate of per diem wages in the locality where the work is performed . . ." 269 U.S. at 388, 46 S.Ct. at 126. The penalty imposed for violation was a fine of not less than fifty nor more than five hundred dollars or imprisonment for not less than three nor more than six months. Each day that a violation continued was declared to be a separate offense. Specifically, the Commissioner of Labor claimed that the rate of wages paid by the construction company to laborers was $3.20 a day whereas the current rate in the locality where the work was being done was $3.60 per day. According to the proof, the construction company was paying its laborers various

rates ranging from $3.20 a day to as high as $6.50 per day. There was proof that representative employers in the area were paying varying rates from as low as $100 per month to $4.05 per hour. Throughout the areas of Oklahoma where the construction company was performing work, the proof showed that employers of construction labor based the wages paid an individual worker upon a variety of factors, such as the class and kind of work performed and the efficiency of the workmen.

The constitutional attack was predicated on the statutory phrase "the current wage in any locality"—that no one could determine that figure with any degree of certainty. Further the term "locality" itself was fatally vague and uncertain. The United States Supreme Court agreed, pointing out that the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it, what conduct on their part will render them liable to its penalty,

".  .  . and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." (citations omitted). 269 U.S. at 391, 46 S.Ct. at 127.

It is apparent that the decision in *Connally* rested upon a factual showing that a sum certain representing a current prevailing wage for construction workers was a nonexistent figure both for lack of uniformity in the practice of employers and the uncertainty of determining the boundaries of "locality."

We are not impressed that any analogy exists between *Connally* and the instant case.

■ We do not have before us a penal statute. The Legislature has imposed no fine or imprisonment against the members of a body who may be in violation of the Open Meetings Act. The sanction is nullification of action taken in violation of the Act and injunction against repeated violations. As this Court pointed out in *Mem-*

*phis Publishing Company v. City of Memphis, supra,* we are dealing with a remedial statute where the requirements of specificity are less stringent.

We do not find Connally, or any of the other cases relied upon by appellant to be persuasive on the issue of vagueness.

■ When a constitutional attack is levied on a statute, we are required to indulge every presumption in favor of its validity and resolve any doubt in favor of, rather than against, the constitutionality of the Act. *Memphis Publishing Company v. City of Memphis, supra; Black v. Wilson,* 182 Tenn. 623, 188 S.W.2d 609 (1945) and *Corn, et al. v. Fort,* 170 Tenn. 377, 95 S.W.2d 620 (1936).

The failure to define "public body" as used in the definition of "governing body" is criticized, but the question we must decide is not whether a precise definition of public body would have been desirable or why, but simply whether it was necessary in the context of the Act in order to escape unconstitutional vagueness.

The definition of a "governing body" is contained in T.C.A. § 8–4402:

" 'Governing body' means the members of any public body which consists of two or more members, with the authority to make decisions for or recommendations to a public body on policy or administration."

In studying the legislative history of the Open Meetings Act, we observe that at several stages the term "public body" was defined by enumerating the boards, commissions, agencies, authorities, etc. to be included in the coverage of the Act.

By amendment, enumerations of the boards, commissions, agencies, authorities, etc. intended to be covered was deleted and the present definition of "governing body" adopted. It is clear from the journal entries and recordings of the debate that both proponents and opponents of the Act assumed the amendment adopted to be more comprehensive than the definition of "public body" that it replaced.

In the construction of a statute we must seek to ascertain the intention of the Legislature as it is expressed in the words of the statute and should look to the entire Act and give consideration to the purpose, objective and spirit behind the legislation. The caption of the act and the policy statement in T.C.A. § 8–4401(a) provide the objective and spirit of the Act. The caption is as follows:

"AN ACT to require that meetings of state, city and county government bodies be open to the public in accordance with Article I, Section 19, of the Tennessee Constitution."

The policy statement is:

"8–4401. Policy—Construction.—(a) The general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret."

We cannot say that "public body" as used in the context of this Act, without definition, is so uncertain that men of common intelligence must necessarily guess as to its meaning and differ as to its application.

It is clear that for the purpose of this Act, the Legislature intended to include any board, commission, committee, agency, authority or any other body, by whatever name, whose origin and authority may be traced to State, City or County legislative action and whose members have authority to make decisions or recommendations on policy or administration affecting the conduct of the business of the people in the governmental sector.

Appellant says that the abridgment of free speech by the Open Meetings Act is a novel but nonetheless genuine issue. We have given thoughtful consideration to the argument advanced and the cases cited, and we are of the opinion that the position of the appellant is without merit.

Article 1, Section 19 of the Constitution of Tennessee provides, inter alia:

"Sec. 19. Freedom of speech and press.—That the printing presses shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

Thus, in the first two sentences of the section, the Constitution provides freedom of the press, open government and freedom of speech. Clearly, the Open Meetings Act implements the constitutional requirement of open government. If it touches a freedom of speech issue, it is at most a subjective matter with the individual member of a covered body and is limited to a chilling effect upon free expression. The only legitimate "chilling effect upon free expression" (appellant's phrase) that a member of a covered body could entertain is that deliberation in open meeting of a particular matter would be detrimental to the public interest. The people, speaking through the Legislature, have determined that they are willing to assume those detriments to secure the benefits of open government as prescribed in the Act. We are not impressed by the argument that a citizen-member of a governing body suffers an infringement of his right to free speech by the requirement that any deliberation toward an official decision must be conducted openly.

It is obvious that the phrase "impose penalties" in T.C.A. § 8–4406(a) is limited to citation for contempt for violation of an injunction issued after a finding of failure to comply with the requirements of the Act. Our Act is distinguishable from the acts of some states that prescribe fines, and/or removal from office for violation of the Open Meetings Act. We concede that in states providing such penalties, both freedom of speech and vagueness are more substantial issues.

Appellant relies upon *Keyishian v. Board of Regents of U. of St. of N. Y.*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

The appellants were professors in a state university and had refused to sign certificates declaring whether or not they were members of the communist party. At issue was the constitutionality of statutes and regulations, the purpose and objective of which was to prevent the appointment or retention of "subversive" persons in the educational system. Definitions and lack of definitions of treasonable or seditious words or acts and criminal anarchy were at issue. In our opinion, the case has no relevance or persuasive force on the issue that appellant urges here.

The same is true of the case of *Ashton v. Kentucky*, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966), where the United States Supreme Court declared unconstitutional a Kentucky statute proscribing the offense of criminal libel.

One of the arguments used in support of this issue is directed to the alleged vagueness of the phrase "to deliberate toward a decision" found in the definition of "meeting", T.C.A. § 8–4402. The definition is as follows:

" 'Meeting' means the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter. Meeting does not include any on site inspection of any project or program."

Appellant insists that the failure of the Legislature to define what it means "to deliberate" will lead to differing opinions among men of common intelligence and will result in an abridgment of the right of free speech. We disagree. Most of what we have said with respect to the failure to define public body is an adequate response to appellant's contention. In addition, it is our opinion that members of public bodies will face very few situations, if any, in which they cannot be aware of the existence or non-existence of a quorum and whether or not they are in the course of deliberation toward a decision on policy or administration affecting the conduct of the business of the people. The probability

that individuals or courts may disagree on the application of a statute in close factual situations, is wholly insufficient to support a charge of unconstitutional vagueness. Most Legislative Acts present problems involving borderline application.

Appellant insists that the body of the Act is broader than its caption in violation of Article 2, Section 17, Constitution of Tennessee. Appellant argues that the caption gives no indication that public notice of meetings will be required, or that actions in violation of the Act will be voided; that the caption refers to "government bodies," but the body of the Act includes "public," "governmental," and "governing bodies."

In *Truss v. The State*, 81 Tenn. 311 (1884), it was said:

"Whatever is of sufficient import to direct the mind to the subject of proposed legislation meets the object of the Constitution." 81 Tenn. at 312.

In *Kizer v. State*, 140 Tenn. 582, 205 S.W. 423 (1918), this Court quoted with approval the following from the United States Supreme Court case of *Montclair v. Ramsdell*, 107 U.S. 147, 2 S.Ct. 391, 27 L.Ed. 431 (1883):

" 'It is not intended to prohibit the uniting in one bill of any number of provisions having one general object fairly indicated by its title. The unity of the object must be sought in the end which the legislative act proposes to accomplish.'

The unity of the subject is to be looked for in the ultimate object of the statute; it cannot with reason be held that each step towards the accomplishment of an end or object should be embodied in a separate act, and so long as the steps are of the same general nature and legitimately parts of one system, end, or object, the act is constitutional." (citations omitted). 140 Tenn. at 590, 205 S.W. at 425.

In *Memphis Street Railway Company v. Byrne*, 119 Tenn. 278, 104 S.W. 460 (1907), the rule applicable to the issue before us in this case was stated succinctly:

"When a statute has but one general object or purpose, the subject is single, however multitudinous may be the means or instrumentalities provided for effecting that purpose." (citations omitted). 119 Tenn. at 299, 300, 104 S.W. at 465.

Also relevant to the present inquiry is the following from *Davis v. Hailey*, 143 Tenn. 247, 227 S.W. 1021 (1920), Chief Justice Green, writing for the Court said:

"So far as section 17, article 2, is concerned, if the various provisions of an act are directed toward a common purpose, and that purpose is expressed in the title, it would make no difference if the several provisions of the act involved all powers of the Legislature. This section of the Constitution regulates the syntax of statutes. It imposes no restriction upon the powers exerted, nor upon the commingling of such powers, so long as the provisions of the statute are not incongruous and are germane to the subject expressed in the caption." 143 Tenn. at 252, 227 S.W. at 1022.

We agree with the observation of Mr. Justice Burnett in *Cosmopolitan Life Insurance Company v. Northington*, 201 Tenn. 541, 300 S.W.2d 911 (1957), that:

"We gather from reading the many authorities under this Section of the Constitution that if the subject is properly set out in the caption that it is not necessary to give details. If the body of the Act deals with the matter which is germane to the subject expressed in the caption then the Act is constitutional." 201 Tenn. at 550, 300 S.W.2d at 915.

It is evident to this Court that all of the details of the Act are germane to the object expressed in the caption and are germane to one another. We have no difficulty in deciding that the terms "public," "governmental" and "governing bodies" included in the Act fall within the broader term government bodies in the caption. *See Witt v. McCanless*, 200 Tenn. 360, 292 S.W.2d 392 (1956).

*Raton Public Service Company v. Hobbes*, 76 N.M. 535, 417 P.2d 32 (1966) provides some support for the view we take upon the issues of vagueness and alleged deficiencies in the caption.

The Raton Public Service Company was a corporation organized under the general incorporation laws of New Mexico to operate the electric utility system in the City of Raton. The stock was in the name of three trustees who held it for the sole benefit of the City. The company was governed by a five (5) man Board of Directors, three (3) of whom were elected by the trustees, and the other two (2) were the Mayor of Raton and one City Commissioner elected by the City Commission. A city ordinance required that all income and revenue from the operation of the system above the expenses of operation and maintenance should be paid to the city treasury every month.

It was the position of the Public Service Company that it was not covered by the Open Meetings Act, but that if it was found to be, then the Act was unconstitutional because the body of the Act was broader than the caption, and because the language of the Act was described as indefinite, vague and uncertain.

The caption of the New Mexico Act, relevant to the issue in said case, reads: "An act relating to public meetings of all governing bodies of the state which are supported by public funds . . ." 417 P.2d at 33.

The language of Section 1 embraced the governing bodies of all municipalities, boards of county commissioners, boards of public instruction and all other governmental boards and commissions of the State or its subdivisions.

The Supreme Court of New Mexico rejected the contention of the utility that it was not a governing body. That Court found from the object and spirit of the entire Act that the utility was a governmental board of a subdivision of the State.

The argument was advanced that the body was broader than the caption in that the caption did not include governing bodies of local subdivisions of the State. That

issue was disposed of by the Supreme Court of New Mexico by simply interpreting the language used in the caption, to-wit: "governing bodies of the State" as meaning "governing bodies within the State" rather than "State governing bodies."

Applying the same fundamental principles of statutory construction which we have alluded to heretofore, the Supreme Court of New Mexico had no difficulty in concluding that its Open Meetings Act was not vulnerable to the attack made against it on the ground that it was so vague, indefinite and uncertain as to deny due process of law.

■ Finally, appellant contends that the Legislature's failure to allow closed meetings under any circumstances renders the law unreasonable and arbitrary.

In support of this issue, appellant insists there are some matters which ought not to be discussed and decided in open meetings. Its list includes the discussion of security measures or means of quelling civil disorders, matters within the attorney-client privilege, collective bargaining negotiations, prospective land purchases by public agencies, the hiring-firing and discipline of public employees, School Board disciplinary actions and a School Board hearing conducted pursuant to the authority of T.C.A. § 49–1417 involving tenured teachers such as Dark.

After stating that, appellant does not suggest it is for this Court to determine which of these matters or others ought to be decided in closed session, it is urged that ". . . failure to recognize the need for *some* matters to be decided in closed meetings is Legislative overkill sufficient to render the law unreasonable and arbitrary."

Appellant cites in support of this proposition, *City of Miami Beach v. Berns*, 245 So.2d 38 (Florida 1971). Florida is one of two states other than Tennessee whose Open Meetings Act provides no exceptions under which closed meetings may be held. The Florida Supreme Court has express jurisdiction to pass on questions certified to it.

In *Berns* the question certified was whether or not under the Florida Open Meetings Act, city councils could hold informal executive sessions for the discussion of condemnation matters, personnel matters, pending litigation or any other matter relating to city government. Appellants rely on the single sentence from *Berns* that: "In this area of regulating, the statute may push beyond debatable limits in order to block evasive techniques." 245 So.2d at 41.

To place the sentence in context, we quote the two paragraphs that precede it:

"The Legislature did not intend to muzzle lawmakers and administrative boards to an unreasonable degree. It would be contrary to reason and violate the right of free speech to construe the law to prohibit any discussion whatever by public officials between meetings. The practice of discussing politics and government is part of our American heritage enjoyed by public officials and private citizens. The evil of closed door operation of government without permitting public scrutiny and participation is what the law seeks to prohibit. If a public official is unable to know whether by any convening of two or more officials he is violating the law, he should leave the meeting forthwith.

It is the law's intent that any meeting, relating to any matter on which foreseeable action will be taken, occur openly and publicly." 245 So.2d at 41.

We find nothing in the *Berns* case that persuades us that the Tennessee Act has pushed beyond debatable limits to block evasive techniques.

Appellant compares the hearing provided for a tenured teacher to a jury trial. We are not impressed with the analogy. A tenured teacher is entitled to judicial review of the action of the Board.

We are aware that the Open Meetings Act has far reaching implications, and that there are many well informed persons in addition to appellant who insist that in certain respects it is detrimental to the public

interest that closed meetings cannot be held for certain deliberations and decisions.

If experience should prove that the public interest is adversely affected by open meetings involving pending or prospective litigation, disciplinary hearings, promotion and demotion decisions, prospective land purchases, labor negotiations, etc., it is the Legislature, not the Judiciary, that must balance the benefits and detriments and make such changes as will serve the people and express their will. In our role as guardians of the Constitution, we find the Act free of defect of constitutional proportions.

The decree of the Chancery Court is affirmed. Costs are adjudged against the appellant.

HENRY and BROCK, JJ., and McCANLESS and PARROTT, Special Judges, concur.