IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

**EDNA FORBES,**

   Plaintiff-Appellee,

Vs.

Wilson Chancery No. 9325
C.A. No. 01A01-9602-CH-00089

**WILSON COUNTY EMERGENCY**
**COMMUNICATION DISTRICT 911**
**BOARD and W. J. MCCLUSKEY,**

   Defendants-Appellants.

_____

FROM THE WILSON COUNTY CHANCERY COURT
THE HONORABLE C. K. SMITH, CHANCELLOR

W. Gary Blackburn, Blackburn, Slobey, Freeman & Happell
of Nashville, For Appellants

Margaret L. Behm, Anne C. Martin, Dodson Parker & Behm
of Nashville, For Appellee

*VACATED IN PART, AFFIRMED IN PART AND REMANDED*

Opinion filed:



**FILED**

**September 13, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCURS:**
**ALAN E. HIGHERS, JUDGE**

**CONCURS IN PART, DISSENTS IN PART:**
**HOLLY KIRBY LILLARD, JUDGE**

This case involves the Tennessee open meetings law and the Tennessee handicap

discrimination law. Plaintiff, Edna Forbes, alleges that defendants, Wilson County Emergency

Communication District 911 Board and W.J. McCluskey, Chairman, violated the Tennessee

Handicap Discrimination Act and the Tennessee open meetings act. After a jury trial with the use of special interrogatories, the court entered an order on the jury verdicts which found violations of both acts and awarded plaintiff $65,975.00 in back pay,[1] $38,675.00 in front pay, $250,000.00 in damages for humiliation and embarrassment, and $50,000.00 for punitive damages. The court also awarded plaintiff's attorney $50,000.00 in fees[2] and $6,455.00 in expenses. Defendants thereafter perfected the present appeal.

Edna Forbes was hired by the Wilson County Emergency Communication District 911 Board (911 Board or Board) on May 8, 1991 as the first Public Safety Answering Point Supervisor for the newly created Board. Prior to accepting a position as supervisor, Ms. Forbes served on the Board itself, helping to establish the new 911 District.

On March 22, 1993, after several months of discomfort, Ms. Forbes met with her physician, who confirmed that she had colon cancer and scheduled her to enter the hospital on March 24, 1993. Ms. Forbes spent the next two days preparing her office for what she anticipated would be a six to eight week absence. Among other things, Ms. Forbes asked her son-in-law, John Lauderman, to come in to assist her with imputing computer information. Ms. Forbes also asked Mr. Lauderman to assist in the office until the relief supervisor, Dot Reynolds, could be available for work.

On March 23, 1993, Ms. Forbes called W.J. McCluskey, chairman of the 911 Board, to inform him that she had been scheduled for emergency surgery, and that she would be out for six to eight weeks. According to Ms. Forbes, Mr. McCluskey yelled at her when she said she would be out of the office, and told her she would be getting herself into trouble. Ms. Forbes wrote the other 911 Board members to inform them of her absence.

Ms. Forbes recovered from her surgery and was told by her doctors that she could return to work on May 11, 1993. A few days prior to that date, Ms. Forbes informed the county attorney, Michael Jennings, that she would be returning to work. Ms. Forbes testified that,

[1]The jury awarded plaintiff back pay of $65,975 for both the Open Meetings Act violation and the violation of the Tennessee Human Rights Act.

[2]Awards of attorney fees are provided for in the Tennessee Human Rights Act, T.C.A. § 4-21-306(a)(7) (1995).

during her entire absence, no one from the 911 Board called her regarding her job duties.

Ms. Forbes alleged, and the jury found, that the 911 Board made its decision to demote Ms. Forbes not at its regularly scheduled open meeting on May 10, 1993, but at a meeting of the Personnel Policy Committee several days earlier which was closed to the public. At the closed meeting, Mr. McCluskey presented a list of his concerns regarding Ms. Forbes' job performance. Ms. Forbes testified that, prior to her demotion, Mr. McCluskey had only discussed one of the fifteen items, a travel voucher, with her. Furthermore, the members of the Personnel Policy Committee testified at trial that they had no independent knowledge of Ms. Forbes's job performance prior to the private meeting. Ms. Forbes was not contacted regarding any of the accusations leveled by Mr. McCluskey at the Personnel Policy Committee meeting. At the next regularly scheduled meeting of the Board, May 10, 1993, the Board voted, without discussion, to demote Ms. Forbes from the position of full-time supervisor to that of part-time operator. Ms. Forbes learned of the Board's decision by way of certified letter.

The jury found that as a result of her demotion, Ms. Forbes suffered a physical relapse, embarrassment, stress, and lack of sleep. Ms. Forbes testified that, following her demotion, she was never contacted by the 911 Board to work in any capacity, including that of a part-time operator.

Appellants present eight issues for review; however, we perceive the dispositive issue to be whether the defendant-appellant violated the open meetings law.

The legislature has declared that it is the policy of this state that "the formation of public policy and decisions is public business and shall not be conducted in secret." T.C.A. § 8-44-101 (a)(1993).

T.C.A. § 8-44-102 provides, as pertinent to the issues before us:

> **8-44-102. Open meetings - "Governing body" defined - "Meeting" defined. -** (a) All meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee.
>
> (b)(1) "Governing body" means: (A) The members of any public body which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public body on policy or administration . . . .

*          *          *

3

(C)(b)(2) "Meeting" means the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter.

(c) Nothing in this section shall be construed as to require a chance meeting of two (2) or more members of a public body to be considered a public meeting. No such chance meetings, information assemblages, or electronic communication shall be used to decide or deliberate public business in circumvention of the spirit or requirements of this part.

Public notice must be given of all regular or special meetings of a governmental body. T.C.A. § 8-44-103. Secret votes are prohibited, and minutes of the meeting are required. T.C.A. § 8-44-104.

T.C.A. § 8-44-105 provides in pertinent part:

**8-44-105. Action nullified - Exception. -** Any action taken at a meeting in violation of this part shall be void and of no effect . . . .

At the close of proof, the trial court submitted a special interrogatory form to the jury. In response to the question "Do you find that the 911 board made a decision or deliberated toward a decision without notice to the public," the jury answered "yes." The scope of our review of findings of fact by the jury is whether there is any material evidence to support the verdict. T.R.A.P. 13 (d).

The trial court also, in compliance with T.C.A. § 8-44-106 (b), made the following findings of fact and conclusions of law:

1. The parties have stipulated that no notice was given to the public of the Personnel Policy Committee meeting which occurred a few days before the May 10, 1993 911 Board meeting.

2. Five (5) members of the 911 Board attended the Personnel Policy Committee meeting, and five (5) members constitute a quorum for the 911 Board. T.C.A. §7-76-105(f). Those members were Mr. McCluskey, Mr. Purnell, Mr. Davis, Mr. Carpenter, and Mr. Wharton.

3. Mr. McCluskey, Chair of the 911 Board, asked the committee chair to call the meeting; therefore, this was not a chance meeting or informal assemblage.

4. Mr. Davis arranged for the committee to meet at the First United Methodist Church in Wilson County. All prior committee meetings had been held at the 911 office on East Main Street in Lebanon.

5. At the outset of the meeting, the committee chair stated that no

4

business was to be conducted at the meeting. However, that does not mean that no business was conducted, for that was the whole purpose of the meeting.

6. Mr. McCluskey had prepared a list of grievances of problems he had with Ms. Forbes. He had requested that the meeting be called for the purpose of discussing what to do with Ms. Forbes. At the meeting, the five (5) 911 Board members discussed that list, deliberating toward a decision to demote her.

7. Although the 911 Board members claim that there was no vote taken at the Personnel Policy Committee meeting, there was deliberation towards a decision based upon Mr. Wharton's testimony and the actions of the 911 Board at its subsequent meeting. At the subsequent 911 Board meeting on May 10, 1993, the 911 Board members decided, without any prior deliberation or any discussion with Ms. Forbes, to demote Ms. Forbes. This May 10, 1993 demotion of Ms. Forbes was an announcement of a decision made at the Personnel Policy Committee meeting a few nights before May 10, 1993.

8. The Personnel Policy Committee did not make a report to the full 911 Board at the May 10, 1993 scheduled meeting regarding its recent meeting.

9. At the May 10, 1993, 911 Board meeting, Mr. Carpenter, a member of the Personnel Policy Committee, made the motion to demote Ms. Forbes, and Mr. Davis seconded it.

10. The 911 Board's decision to demote Ms. Forbes, without discussion, at the May 10, 1993 911 Board meeting violated the Open Meetings Act because the Board deliberated towards that decision at a previous meeting not open to the public. T.C.A. § 8-44-101 *et seq.*; *State of Tennessee v. Town of Kingston Springs*, 19 Tam 40-15 (Tenn. App. 1993).

11. The May 10, 1993 decision to demote Ms. Forbes is void and of no effect. Tennessee Open Meetings Act, T.C.A. § 8-44-105.

Our review of findings of fact by the trial court in civil actions is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d).

Appellants assert that the open meetings act is not applicable in the instant case because the Personnel Policy Committee is not a governing body, the committee did not have any authority to make any decision about plaintiff's job, and, regardless, no deliberations occurred at the Personnel Policy Committee meeting.

In *Dorrier v. Dark*, 537 S.W.2d 888 (Tenn. 1976), our Supreme Court, commenting on what constitutes a governing body under T.C.A. § 8-44-102 (b)(1), said:

5

> It is clear that for the purpose of this Act, the Legislature intended to include any board, commission, committee, agency, authority or any other body, by whatever name, whose origin and authority may be traced to State, City or County legislative action and whose members have authority to make decisions or recommendations on policy or administration affecting the conduct of the business of the people in the governmental sector.

537 S.W.2d at 892.

Based on *Dorrier*, we find that the Personnel Policy Committee was a "governing body" as contemplated by T.C.A. § 8-44-102(b)(1). Moreover, there is material evidence in the record to support the verdict of the jury that the 911 board, through the Personnel Policy Committee, not only had the authority to make a decision about plaintiff's job, but did, in fact, make a decision or deliberate toward a decision regarding plaintiff's employment at a scheduled, private meeting, held without notice to the public. The evidence does not preponderate against the trial court's findings that the discussions which were held at that meeting culminated in a motion at the subsequent 911 Board meeting to demote Mrs. Forbes. Finally, the personnel policy committee maintained no minutes of its meeting, as required by T.C.A. § 8-44-103. Accordingly, the record supports a finding that the open meetings act was violated and thus, that the action of the 911 Board is "void and of no effect." T.C.A. § 8-44-105. Since the board's action is void, plaintiff has not been demoted and is reinstated to her position as supervisor. Because there was no demotion, plaintiff has not been discriminated against "in the hiring, firing and other terms and conditions of employment," T.C.A. § 8-50-103(a), and thus has no cause of action under the handicap discrimination laws.

For the reasons stated herein, the judgment of the trial court holding defendants liable for violation of the handicap discrimination statute is vacated. The judgment of the trial court holding that defendants violated the open meetings act is affirmed, and plaintiff's purported demotion is void and of no effect. The case is remanded to the trial court for such further proceedings as may be necessary to determine proper compensation due plaintiff from May 10, 1993. The trial court should also take such additional steps as are necessary to comply with the provisions of T.C.A. § 8-44-106. Costs of the appeal are assessed against the appellants.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**