IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2018

## LORNA GIBSON v. CHARLES BIKAS

**Appeal from the Chancery Court for Hamilton County**
**No. 17-0197     Pamela A. Fleenor, Chancellor**

_____

### No. E2018-00911-COA-T10B-CV

_____

Appellant sought disqualification of the trial court judge pursuant to Tennessee Supreme Court Rule 10B. Finding no error, we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and RICHARD H. DINKINS, JJ., joined.

Charles William Bikas, Chattanooa, Tennessee, *Pro se*.

Emily Beth Brenyas, Georgetown, Tennessee, for the appellee, Lorna Gibson.

### OPINION

### I.  FACTUAL BACKGROUND

This appeal follows the Hamilton County Chancery Court's denial of a recusal motion, which is governed by Tennessee Supreme Court Rule 10B. The underlying facts of this case have been more fully described by this Court in *Gibson v. Bikas*, 2018 WL 1124507, No. E2017-00883-COA-R3-CV (Tenn. Ct. App. Feb. 28, 2018) (*perm. app. pending*). The relevant portions of the underlying facts are:

> At issue on appeal is an order of protection sought by the petitioner, Lorna Mae Gibson, against the respondent, her brother-in-law, Charles William Bikas.  Ms. Gibson had obtained a previous order of protection, which was granted by the Hamilton County Chancery Court ("trial court"), with Chancellor Pamela A. Fleenor presiding, on May 19, 2015 ("2015 OP").  Although the 2015 OP is not in the record on appeal, it is undisputed that in

the 2015 OP, the trial court required Mr. Bikas to have no contact with Ms. Gibson or her two minor daughters ("the Children"), who were six and two years of age at the time the 2015 OP was entered. The 2015 OP expired on May 19, 2016, without Ms. Gibson's having filed a petition for an extension.

The series of events underlying the 2015 OP began in the fall of 2014 when a referral was called in to the Department of Children's Services ("DCS") against Ms. Gibson, who had been residing with the Children. At the time of the DCS referral, the Children were placed in the temporary custody of Ms. Gibson's sister, Jessica Bikas, and her sister's husband, Mr. Bikas. After approximately two months, Mr. and Ms. Bikas separated, and Ms. Bikas filed a petition for an order of protection against her husband, alleging that he had threatened violence against her if he lost custody of the Children. In March 2015, the youngest child, N.M., was placed with paternal relatives, and the oldest child, A.W., entered DCS custody and was placed with non-relative foster parents. It is undisputed that Ms. Bikas's petition for an order of protection was subsequently dismissed.

Later in the spring of 2015, Mr. Bikas, still separated from Ms. Bikas, co-signed a lease with Ms. Gibson concerning an apartment. Ms. Gibson subsequently alleged that Mr. Bikas repeatedly tried to coerce her into a romantic relationship by threatening to remove his name from the lease and threatening to take legal action to obtain custody of the Children. Ms. Gibson filed the petition for the 2015 OP the day after Mr. Bikas allegedly stayed overnight in her apartment without permission and allegedly sexually molested her. Although on appeal in this action, Mr. Bikas vehemently denies Ms. Gibson's allegations underlying the 2015 OP, he acknowledges that he consented to the trial court's entry of the original order without an evidentiary hearing. Mr. Bikas asserts on appeal that he agreed to the 2015 OP "so that he could break the apartment lease" with Ms. Gibson.

In the meantime, A.W. was residing in the spring of 2015 with her foster parents within the same school district where she had previously lived with Ms. Gibson. A.W. resumed attendance at the elementary school where she previously had been a student, and she resumed speech and language therapy with Ginger Vitrano, a speech and language pathologist who had provided therapy to A.W. in the past. Ms. Vitrano testified in this matter that she became concerned after observing changes in A.W.'s behavior, particularly changes denoting sexually reactive behavior. Ms. Vitrano subsequently applied with DCS to provide a foster placement for A.W.

2

Upon approval, Ms. Vitrano provided foster care to A.W. for approximately eighteen months. A.W. was eventually placed in the custody of her biological father, who is not a party to this action. Ms. Gibson's younger daughter has remained in her original foster placement since the Children's removal from Ms. Gibson's home. At some point in 2015, Mr. and Ms. Bikas reconciled.

Ms. Gibson commenced the instant action, initially acting *pro se*, by filing a petition for an order of protection against Mr. Bikas on March 24, 2017. She again sought a one-year order requiring Mr. Bikas to have no contact with her or the Children, who were by then eight and four years of age. In her petition, Ms. Gibson repeated the factual allegations underlying the 2015 OP and averred that since entry of the 2015 OP, Mr. Bikas had continued his attempts to harass and influence her by repeatedly attempting to gain custody of A.W. for allegedly illicit purposes.

Upon Ms. Gibson's petition, the trial court, with Chancellor Jeffrey M. Atherton presiding by interchange, entered an ex parte order of protection as to Ms. Gibson. The court denied an ex parte order of protection as to the Children and set a hearing for April 3, 2017, directing Ms. Gibson to show cause why the Children required protection from Mr. Bikas. The court stated the following in this regard: "Question exists as to standing as children do not appear to be in physical or legal custody of [Ms. Gibson]."

By the time of the April 3, 2017 hearing, Ms. Gibson was represented by her current counsel, and Mr. Bikas was represented by attorney Mark Whittenburg. Following a hearing, during which Ms. Gibson's counsel requested a continuance because Ms. Gibson had been involved in an automobile accident while on her way to the courthouse, the trial court, with Chancellor Fleenor again presiding, entered an order resetting the hearing for April 10, 2017. Although Mr. Bikas insists on appeal that he did not agree to this continuance, the trial court's order memorializing the grant of continuance, entered on April 7, 2017, states that it did so upon the facts underlying Ms. Gibson's absence and "agreement by the Parties."

The trial court then conducted a bench trial on April 10, 2017, during which the court heard testimony from the parties, Ms. Bikas, and Ms. Vitrano. Attorney Laura E. Banks, who had been appointed as a guardian ad litem ("GAL") to represent the Children's best interests in the separate custody case, appeared on behalf of the Children. Ms. Gibson testified regarding the allegations underlying the 2015 OP, stating that Mr. Bikas had "a bad

obsession with [her] and especially [her] oldest daughter, [A.W.]" She further testified that Mr. Bikas "had continuously threatened" to "take [her] name off the lease" of the apartment for which he had co-signed and had told her that once she was homeless, he was "going to go and get custody of [her] child" and she would have "to do what [he said]." Ms. Gibson explained that once the 2015 OP expired, Mr. and Ms. Bikas had filed petitions seeking custody of the Children and termination of her parental rights to A.W. She acknowledged that the Children had been removed from her custody in the past by DCS. She stated that she had not filed for an extension of the 2015 OP due to her own medical condition at the time.

. . . .

Upon determining that "credible evidence" indicated that Mr. Bikas was currently "a threat to the safety" of Ms. Gibson and the Children, the trial court granted Ms. Gibson's petition in an order entered April 10, 2017 ("2017 OP"). The 2017 OP had the effect of extending the ex parte order into a one-year, no-contact order of protection on behalf of Ms. Gibson and modifying the ex parte order to include the Children in the one-year, no-contact order. The court had ruled orally during trial that Ms. Gibson's status as a parent afforded her standing to petition on behalf of the Children, pursuant to Tennessee Code Annotated § 36-3-602(b), despite her lack of current legal or physical custody. Finding that Mr. Bikas had done "the things listed in the Petition," the court adopted the allegations in the petition by reference into the 2017 OP. The court further found in the 2017 OP that Mr. Bikas had "stalked" and "threatened" Ms. Gibson and had "sexually molested" and "sexually abused" A.W. The court also ordered Mr. Bikas to pay all court costs and attorney's fees.

*Gibson* at *1-4

In the first appeal, one of the issues on appeal was "whether Ms. Gibson demonstrated by the required evidentiary standard that she and the Children were in need of protection from abuse by Mr. Bikas." *Id.* at *5. This Court's discussion of this issue follows:

Finally, Mr. Bikas asserts that this Court should vacate the 2017 OP and, if necessary, remand for a hearing before a different judge because the trial court judge allegedly demonstrated bias toward him. However, Mr. Bikas never filed a motion for the trial court judge's recusal pursuant to Tennessee Supreme Court Rule 10B. Inasmuch as the issue of recusal was

4

not presented to the trial court, we determine that it is not properly before this Court on appeal. This Court is one "of appeals and errors," and "we are limited in authority to the adjudication of issues that are presented and decided in the trial courts." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976).

Moreover, Mr. Bikas provides no extrajudicial basis for the trial court judge to have been biased against him. In his principal brief on appeal, Mr. Bikas delineates a long list of purportedly biased actions that are primarily comprised of rulings against him or procedural delays. *See Watson v. City of Jackson*, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) ("Adverse rulings and 'the mere fact that a witness takes offense at the court's assessment of the witness,' do not provide grounds for recusal . . . in light of the 'adversarial nature of litigation.'") (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)). Insofar as Mr. Bikas argues that the trial court erred in granting the order of protection based on judicial bias, his argument is without merit.

*Id*. at *10-11.

After this Court's opinion was filed, Mr. Bikas filed, on April 23, 2018, a Motion to Recuse in the trial court. The motion notes that it "corrects the procedural error listed in [the Court of Appeals decision] where the Defendant's motion to recuse Judge Fleenor was denied." The motion also asserts that it is timely because it "is a direct response to the Order of Protection extension that Lorna Gibson requested on April 9th, 2018 and is therefore timely."

The motion to recuse in the trial court alleges an "acrimonious relationship" between Judge Fleenor and Mr. Bikas, and it alleges that Mr. Bikas has filed five complaints with the Board of Judicial Conduct against Judge Fleenor. Mr. Bikas asserts that Judge Fleenor "promis[ed] to give future favorable rulings against [Mr. Bikas] on October 5th, 2015" and issued orders of protection against him. The motion also alleges that the factual basis of the motion is "a substantial history of biased acts." Despite attaching two affidavits to support his motion to recuse, Mr. Bikas does not plainly explain the biased acts that support his request. Rather, he appears to rely on his multiple complaints to the Board of Judicial Conduct and Judge Fleenor's legal rulings to support his allegations.

## II. STANDARD OF REVIEW

When reviewing an appeal pursuant to Tennessee Supreme Court Rule 10B, we

limit our review to whether the trial court erred in denying the appellant's motion for recusal. *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015) (*no perm. app. filed*). We do not review the merits or correctness of the trial court's other rulings. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). "[W]e review the denial of a motion for recusal under a de novo standard of review." *Id.* (citing Tenn. Sup. Ct. R. 10B § 2.06).

The appellate court may order the other parties to answer the appellant's petition and file any necessary documents, but it is also authorized to adjudicate the appeal summarily, without an answer from other parties. *Id*. at § 2.05. Having reviewed Appellant's petition and supporting documents, we have determined that an answer and additional briefing is unnecessary, and we have elected to act summarily on the appeal in accordance with Tennessee Supreme Court Rule 10B, § 2.05. Oral argument is likewise unnecessary.

## III. DISCUSSION

We set forth the legal principles applicable to this case in *In Re: Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543 (Tenn. Ct. App. Aug. 8, 2016) (*no perm. app. filed*):

> The party seeking recusal bears the burden of proof. *Williams*, 2015 WL 2258172, at *5; *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015) (*no perm. app. filed*). "[A] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke*, 398 S.W.3d at 671 (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." *In re A.J.*, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). "The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" *Id.* (quoting *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009)).

The terms "bias" and "prejudice" usually refer to a state of mind or attitude that works to predispose a judge for or against a party, but not every bias, partiality, or prejudice merits recusal. *Watson v. City of Jackson*, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (citing *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). "'Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial.'" *Id.* at 933 (quoting *Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)). To merit disqualification, the prejudice must be of a personal character, directed at the litigant, and stem from an extrajudicial source resulting in an opinion on the merits on some basis other than what the judge learned from participation in the case. *Id.* at 929. "A trial judge's opinions of the parties or witnesses that are based on what he or she has seen at trial are not improper and 'generally do[ ] not warrant recusal.'" *Id.* at 933 (quoting *Neuenschwander v. Neuenschwander*, No. E2001-00306-COA-R3-CV, 2001 WL 1613880, at *11 (Tenn. Ct. App. Dec. 18, 2001)). Consistent adverse rulings may lead a party to wish for another trial judge, but they do not provide a basis for requiring the trial judge's recusal from the case. *Runyon v. Runyon*, No. W2013-02651-COA-T10B, 2014 WL 1285729, at *10 (Tenn. Ct. App. Mar. 31, 2014). Adverse rulings usually are not sufficient to establish bias. *Duke*, 398 S.W.3d at 671 (citing *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008)). "'Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification.'" *Id.* (citing *Alley*, 882 S.W.2d at 821).

*In Re: Samuel P.,* 2016 WL 4547543, at *2.

In reviewing Appellant's asserted grounds for recusal pursuant to the de novo standard required by Rule 10B, we have determined that Mr. Bikas has failed to establish that the trial court's impartiality may reasonably be questioned or that the trial court has an impermissible bias or prejudice.

Appellant's petition indicates that he disagrees with Judge Fleenor's factual findings and legal decisions related to the various orders of protection. Nothing in the record on appeal indicates that Judge Fleenor guaranteed rulings adverse to Mr. Bikas, as he alleges. On our review of the record on appeal, Judge Fleenor's actions appear to be based on her observations throughout the case. Judges inevitably form opinions about parties during the course of litigation, and those opinions are not always positive.

*Marcum v. Caruana*, No. M2012-01827-COA-10B-CV, 2012 WL 3984631, at *7 (Tenn. Ct. App. Sept. 11, 2012).  "Judicial remarks that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge.'"  *Krohn v. Krohn*, No. M2015-01280-COA-T10B-CV, 2015 WL 5772549, at *10 (Tenn. Ct. App. Sept. 22, 2015), *perm. app. denied* (Tenn. Oct. 15, 2015) (quoting *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *4 (Tenn. Ct. App. Feb. 11, 2014)).

> Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartially issue for strategic advantage, which the courts frown upon. *See Kinard* [*v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)].

*Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001).  If bias is based on the actual observation "of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge."  *Alley*, 882 S.W.2d at 821.  The evidence in this case simply does not support recusal.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded for further proceedings.  Costs of this appeal are taxed to the appellant, Charles Bikas, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE