**FLORIDA COMMITTEE FOR LIABILITY REFORM,**
**Plaintiff,**

v.

**James McMILLAN, etc., et al., Defendants,**

**Robert Butterworth, as the Attorney General, State of Florida, Defendant/Intervenor.**

**No. 88–113–Civ–J–12.**

United States District Court, M.D. Florida, Jacksonville Division.

Feb. 26, 1988.

William H. Adams, III, Peter L. Dearing, Robert J. Winicki, Barry L. Anderson, Mahoney, Adams, Milam, Surface & Grimsley, Jacksonville, Fla., for Florida Committee for Liability Reform.

James L. Harrison, Steven E. Rohan, Stephen E. Durden, Jacksonville, Fla., for James McMillan, in his official capacity as Sheriff of Duval County, Florida and on behalf of all others similarly situated and Tommie Bell, in her official capacity as Supervisor of Elections for Duval County, Florida, and on behalf of all others similarly situated.

George L. Waas, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for Robert A. Butterworth, Atty. Gen., defendant/intervenor.

Wayne Hogan, Brown, Terrell, Hogan, Ellis, McClamma & Yegelwel, P.A., Jacksonville, Fla., for Academy of Florida Trial Lawyers and Wayne Hogan, amicus curiae.

## ORDER GRANTING PRELIMINARY INJUNCTION

MELTON, District Judge.

This cause came on to be heard upon plaintiff's Motion for Preliminary Injunction. The Court has considered the pleadings, plaintiff's Motion for Preliminary Injunction, the memoranda filed herein, the testimony of witnesses and arguments of counsel at the hearing held on February 18, 1988, and the supplemental evidence filed following the hearing. Based on the consideration of these matters, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff Florida Committee for Liability Reform ("Committee") is a political committee registered under the laws of the State of Florida whose principal place of business is located in Duval County. The Committee intends to solicit signatures, for a petition urging a referendum on a proposed state constitutional amendment, from registered voters at polling places during the hours of the primary election to be held on Tuesday, March 8, 1988 ("Super Tuesday"). The Committee admits that an adverse advisory opinion from the Florida Supreme Court may, under some narrow circumstances, deter the intended solicitation of signatures. Transcript of Hearing held Feb. 18, 1988 ("Tr.") at 29 (testimony of Donald C. Jones, Asst. Treasurer of Committee). However, the Committee has avowed that it will proceed with soliciting signatures on Super Tuesday if the Florida Supreme Court has not ruled on their

present proposal, *id.* at 26–27. Moreover, the Committee promises that in any event it will take all measures to draft an acceptable proposal prior to Super Tuesday and present that proposal for signatures. *Id.* at 27–31.

2. Defendant James McMillan ("McMillan") is the Sheriff of Duval County, Florida, and has statutory responsibility for enforcing order at the polling places, including enforcing the statute. The class represented by McMillan consists of all sheriffs of the various counties throughout the State of Florida. *See* Order Certifying Defendant Classes, entered Feb. 24, 1988, at p. 5.

3. Defendant Tommie Bell ("Bell") is the Supervisor of Elections for Duval County, Florida, and has statutory responsibility for enforcing order at the polling places and ensuring that all polling places meet the requirements of the statute. The class represented by Bell consists of all supervisors of elections of the various counties through the State of Florida. *See id.*

4. Defendant Robert Butterworth, as the Attorney General of the State of Florida, has been granted leave to intervene on behalf of defendants in this action.

5. The present motion asks the Court to declare illegal and preliminarily enjoin enforcement of § 102.031(3) of the Florida Statutes (1987) by the two defendant classes during the primary election scheduled for Super Tuesday. The challenged statute provides:

(3)(a) No person, political committee, committee of continuous existence, or other group or organization may solicit voters within 150 feet of any polling place, or polling room where the polling place is a shopping center or mall, on the day of any election.

(b) For the purpose of this subsection, the term "solicit" shall include, but not be limited to, soliciting or attempting to solicit any vote, opinion or contribution for any purpose; distributing or attempting to distribute any political or campaign material; soliciting or attempting to solicit a signature on any petition; and selling or attempting to sell any item, except within an established place of business.

(c) Each supervisor of elections shall determine and inform the clerk of each precinct of the area within which soliciting is unlawful, based on the particular characteristics of that polling place. The supervisor or the clerk may take any responsible action necessary to ensure order at the polling places affected by such soliciting, including:

1. Designating a specific limited area for soliciting, and

2. Having disruptive and unruly persons removed by law enforcement officers from the polling place.

The statute became effective October 1, 1987. *See* 1987 Fla. Laws ch. 87–363, § 15.

6. The current statute is the culmination of twelve years of legislative experimentation by the State of Florida. Prior to 1976, two statutes regulated the area surrounding polling places. Section 101.121, as enacted at that time, limited those persons who could be within 15 feet of the polling place to persons who were in line to vote. Fla.Stat. § 101.121 (1975). Section 104.36 forbade the distribution of political literature and the solicitation of votes from an elector within 100 yards of any polling place. Fla.Stat. § 104.36 (1975). In 1976, the Attorney General's Office opined that the latter statute did not limit the solicitation of signatures for petitions seeking the submission of a proposed constitutional amendment at a future election. Op. No. 76–44, 1976 Fla. Att'y Gen.Ann.Rep. 76, rendered Feb. 24, 1976. The state legislature responded by amending the section to outlaw "solicit[ing] or attempt[ing] to solicit any vote, opinion, or contribution for any purpose; solicit[ing] or attempt[ing] to solicit a signature on any petition." Fla. Stat. § 104.36 (1977) (as amended by 1976 Fla. Laws ch. 61, § 1).

In 1984, a political committee successfully enjoined enforcement of § 104.36 as a

facially overbroad infringement of the right to speak freely and petition the government for redressing grievances. *Clean–Up '84 v. Heinrich*, 582 F.Supp. 125 (M.D.Fla.1984), *aff'd*, 759 F.2d 1511 (11th Cir.1985). Shortly after the affirmation of the preliminary injunction in *Clean–Up '84*, the Florida Legislature reformed its electoral regulations by amending § 102.031 to provide a procedure by which organizations such as the Committee could give advance notice of their intention to solicit near polling places and thereby give election officials an opportunity to make arrangements to ensure order. *See* 1985 Fla.Laws ch. 205, § 2. At the same time, the distance surrounding a polling place in which only electors are permitted, as set forth in § 101.121, was extended to 50 feet. *See id.* § 1. The reform additionally excepted commercial businesses, privately owned homes, and privately owned property from the effect of the new 50–foot exclusionary zone. *See id.* The current statute, enacted in 1987, finally repealed § 104.36 and replaced the notice-and-solicit procedure of § 102.031 with the presently challenged 150–foot radius in which solicitation of votes, opinions, contributions, and signatures is prohibited. *See* 1987 Fla.Laws ch. 184, § 4, *re-enacted* ch. 363, § 15. The 1987 amendments also changed the requirement of the 50–foot exclusionary zone in § 101.121 from the polling place to the polling room.

7. Defendants presented testimony from Donald L. Hersey ("Hersey"), Supervisor of Elections for Putnam County and President of The Florida State Association of Supervisors, and Lee Jarrell ("Jarrell"), Assistant Supervisor of Elections for Duval County, concerning the events which prompted the 1987 changes in § 102.031 and the interests allegedly advanced by the statute in its current form. This testimony is not legislative history and was not represented as such. However, it sheds light on the factual basis which might support whatever legislative purposes are otherwise proved.

8. Hersey testified that "one of the biggest problems" prompting § 102.031(3) was the objection by churches, some of which withdrew as polling places following the 1986 election, to the content of specific solicitations for signatures on petitions seeking a constitutional amendment legalizing casino gambling and to the general practice of solicitations for signatures. Tr. at 44, 46. Jarrell confirmed this observation. *Id.* at 68. Hersey also identified "numerous complaints" from persons over the posting of candidate literature as close as 50 feet from the polling places. *Id.* at 44. Jarrell added that the 50–foot restriction did not adequately deal with disruptions at a school when polls were located there. *Id.* at 69. The Court observes that this testimony was anecdotal and the prevalence of these problems was not established.

9. Defendants McMillan and Bell did not submit formal legislative history, although defendant/intervenor Butterworth entered into evidence two staff analyses from the Florida House of Representatives Committee on Ethics and Elections and a letter of transmittal from Committee Staff Director Wayne R. Malaney to State Representative Dorothy Sample. Intervenor's Exh. No. 3. Plaintiff Committee submitted tapes from hearings concerning H.B. 549, which became § 102.031(3), held before a subcommittee and the Florida House Committee on Ethics and Elections. Butterworth's documents do not discuss the purpose of the statute or the factual basis for the choice of the 150–foot distance. The tapes do not reveal the basis for the particular distance selected by the Legislature, although H.B. 549 as originally proposed would have set the distance at 100 feet. The tapes suggest that the distance was selected to ensure that no petitioning could occur within any building which is a polling place. The tapes corroborate the significance of the loss of polling places at churches as a motivation for the 1987 amendments.

10. Hersey and Jarrell both testified that they were not aware of a single polling place that would be lost if enforcement

of § 102.031(3) on Super Tuesday were enjoined. Tr. at 60, 68.

11. Polling places in Duval County include government buildings, schools and libraries. In various other counties in Florida, polling places also include condominiums, as well as schools, fire departments, churches and public buildings. Tr. at 26, 46. Private property is within the 150–foot distance of many polling places. *Id.* at 50.

12. Hersey testified he would not attempt to enforce § 102.031 against activity taking place within 150 feet of a polling place but occurring on private property. Tr. at 50, 52, 57. He also testified, however, that this was his personal interpretation of his authority and that the statute on its face applied to activities on private property which might be subjected to enforcement by a different elections supervisor or sheriff. *Id.* at 57–58.

13. If § 102.031(3) is enforced during the Committee's solicitation of voters near the polls on Super Tuesday, the Committee may be unable to obtain the signatures necessary to place its proposed amendment on the general election ballot in November. *See* Verified Complaint, ¶ 22.

### CONCLUSIONS OF LAW

■ 1. This lawsuit presents issues which are justiciable. Because this suit represents an anticipatory challenge to a statute, plaintiff's standing depends upon whether the threat of prosecution is real and immediate or "imaginary" and "speculative." *Hardwick v. Bowers,* 760 F.2d 1202, 1205 (11th Cir.1985), *rev'd on other grounds,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). Defendants acknowledge the readiness of the members of defendant classes to enforce the statute. Plaintiff's professed intention to petition within 150 feet of polling places on Super Tuesday, in the face of a credible threat of prosecution, places the controversy beyond the "imaginary" and "speculative," presenting the Court with parties whose positions are sufficiently adverse to

present a case or controversy within the Court's jurisdiction. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298–302, 99 S.Ct. 2301, 2308–2314, 60 L.Ed. 2d 895 (1979).

2. The first amendment protects the Committee's rights to political speech, to association, and to petition for a change in the Florida Constitution by soliciting voters' signatures. *Clean–Up '84 v. Heinrich,* 759 F.2d 1511, 1513 (11th Cir.1985).

3. The Court can issue a preliminary injunction only if the Committee satisfies the four-part test:

(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Johnson v. United States Dep't of Agric.,* 734 F.2d 774, 781 (11th Cir.1984).

4. The Court finds that the Committee has a substantial likelihood of prevailing on the merits. The Court perceives several constitutional defects in § 102.031(3):

■ (a) *Subject-matter overbreadth.* The plain language of the statute forbids "soliciting or attempting to solicit any ... opinion ... for any purpose." This provision prohibits virtually every form of expression between persons who are within 150 feet of the polling place. The broad scope of this prohibition directed at expressive activity renders § 102.031(3) facially invalid. *Board of Airport Comm'rs v. Jews for Jesus, Inc.,* — U.S. —, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987).

Counsel for defendants McMillan and Bell argues that this construction of the statute is "silly" and he suggests that the Court construe the statute as the Legislature intended. The Court, however, cannot conceive of a principled manner by which to narrow plainly overbroad language. *See id.* 107 S.Ct. at 2572–73 ("[T]he vagueness

of this suggested construction itself presents serious constitutional difficulty."). Moreover, if § 102.031(3) is narrowed by carving exceptions for some messages but not for others, the statute becomes an invalid content-based regulation of speech. *See Chicago Police Dep't v. Mosley*, 408 U.S. 92, 101, 92 S.Ct. 2286, 2293, 33 L.Ed.2d 212 (1972).

■ (b) *Overbroad Geographic Application.* The terms of § 102.031(3) stretch its application to a distance of 150 feet from a polling place regardless of the private or public status of the property so affected. As noted previously, many traditional public forums and private dwellings fall within the 150–foot radius from polling places throughout the state. The state can prove no threat to the voting process at these sites, hence the statute once more is unconstitutionally overbroad. *Clean–Up '84*, 759 F.2d at 1514.

■ It was proposed by counsel and witnesses that this effect could be mitigated by using § 102.031(3)(c) as a discretionary method to avoid unconstitutional applications. Two problems arise from this position. First, the language of § 102.031(3), when compared to § 101.121, does not fairly admit an exception for private property within 150 feet of polling places. Second, if § 102.031(3)(c) is given wide interpretation to permit discretion by each elections supervisor, the statute becomes imbued with the kind of standardless discretion which the Supreme Court condemned in *Cox v. Louisiana*, 379 U.S. 536, 557, 85 S.Ct. 453, 465–66, 13 L.Ed.2d 471 (1965). *Accord Jews for Jesus, Inc.*, 107 S.Ct. at 2573.

■ (c) *Availability of Less Restrictive Alternatives.* The burden in a first amendment challenge of this nature is placed on the government to demonstrate that the restriction on speech is narrowly tailored to the governmental ends which the restriction seeks to vindicate. *See Federal Election Comm'n v. Massachusetts Citizens for Life*, 479 U.S. 238, 107 S.Ct.

616, 631, 93 L.Ed.2d 539 (1986). Defendants here have failed to meet this burden. One proffered state interest, preservation of polling places, simply is not substantial enough to justify infringement of free speech rights. The underlying motivation in this instance, appeasement of churches which objected to the content of previous petitioning, is constitutionally suspect. *Cf. Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 127, 103 S.Ct. 505, 512–13, 74 L.Ed.2d 297 (1982) ("The Framers did not set up a system of government in which important, discretionary governmental powers would be delegated to or shared with religious institutions."). Another proffered interest, control of disruption within the corridors of the polling places, does not justify the additional 150–foot buffer zone that § 102.031(3) creates. Although the control of disruption at polling places is a substantial state interest, it should be noted that "polling place" is defined as the building in which a "polling room" is located. Fla. Stat. § 97.021(18) (1987). Accordingly, the statute is overbroad because it creates a 150–foot buffer zone beyond the area in which the state claims a need to control disruption. The third proffered interest, preserving the sanctity of the vote, can be met by less restrictive means and is not fully met by the challenged statute as construed by defendants. Florida has a full set of statutes that appear to create adequate tools to prevent voter harassment. *See Clean–Up '84*, 582 F.Supp. at 127 (explaining these "more precise and limited methods"). Additionally, the protection of the voting process requires no more than insulation of voters prior to the casting of ballots. The state could more narrowly achieve its goals by arranging polling places with separate entrances and exits and limit the approach of voters only on their way into the polls. *See Daily Herald Co. v. Munro*, 838 F.2d 380 (9th Cir.1988). The Committee concedes the 50–foot restriction of § 101.121 while defendants point to the availability of solicitation beyond 150 feet. Consequently, defendants must demonstrate the incremental contri-

bution to the electoral process that is achieved by the 100 feet of public forum which is at issue. The Court perceives that defendants are unlikely to offer an adequate justification to counterbalance the free speech rights infringed by § 102.031(3). Further, defendants willingness to carve out exceptions for kinds of speech and adjoining properties suggests that the statute "has an insufficient nexus with any of the public interests that may be thought to undergird" it. *United States v. Grace*, 461 U.S. 171, 181, 103 S.Ct. 1702, 1709, 75 L.Ed.2d 736 (1983) (maintenance of proper order and decorum of United States Supreme Court did not require ban on picketing on sidewalks surrounding the building). Finally, if the quality of this interest is merely the offense suffered by a voter who approaches the polls only to be approached by a petitioner, this brief exposure to grassroots democratic process, however unpalatable to some individuals, cannot justify a restriction on speech when the offensive activity can be avoided readily by communicating a declination of interest to the petitioner. *Cf. Cohen v. California*, 403 U.S. 15, 21–22, 91 S.Ct. 1780, 1786–1787, 29 L.Ed.2d 284 (1971).

■ 5. The Committee will suffer irreparable injury in two respects. First, the loss of first amendment rights, even for brief periods, causes irreparable harm. *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir.1983); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981); *Clean–Up '84 v. Heinrich*, 582 F.Supp. 125, 127 (M.D.Fla. 1984), *aff'd*, 759 F.2d 1511 (11th Cir.1985). The restriction on expression within 150 feet of the polling place works precisely this result. Second, restricting the Committee's access to the opportunity to solicit signatures from registered voters on Super Tuesday will work on irreparable harm to the Committee's exercise of its right to petition the government for redress of its grievances. *Clean–Up '84*, 582 F.Supp. at 127.

6. Defendants argue that the Court should find no substantial likelihood of success by or irreparable harm to the Committee because the statute should be measured by a reasonableness test that permits experimentation by the states. The precedent cited by defendants is inapposite. In *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), the Court considered the standard for evaluating regulation of speech in a limited public forum, *id.* at 650–55, 101 S.Ct. at 2565–68, and this standard is lower than the scrutiny applied to traditional public forums such as a sidewalk or street, *see United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); *Kuhz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). Moreover, the framework set forth in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1985), does not apply to the statute challenged here. The Supreme Court in *Playtime Theatres* limited its opinion to businesses that purvey sexually explicit materials and distinguished that type of expression as one for which society's interest is of a different and lesser magnitude than society's interest in protecting the kind of political expression at issue in the present case. *See id.* at 49 & n. 2, 106 S.Ct. at 934 & n. 2. One court of appeals has refused to apply *Playtime Theatres* in a case involving political picketing. *Finzer v. Barry*, 798 F.2d 1450, 1469 n. 15 (D.C.Cir.1986), *cert. granted sub nom. Boos v. Barry*, — U.S. —, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987). If the analysis of *Playtime Theatres* could be applied to political expression, it would not be available to defend § 102.031(3). The lower level of scrutiny applied to content-neutral regulation is available only if the asserted governmental interest is unrelated to the suppression of speech. *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). However, defendants here must rely on the asserted interest of "voter privacy", an interest directed at the suppression of the speech for its content. If this problem

were not present, defendants would be forced to defend the statute under the framework established for evaluating content-neutral regulations of fully protected political speech, which imposes the burden of demonstrating that the restriction is narrowly tailored to serve a significant governmental interest. *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068–69, 82 L.Ed.2d 221 (1984). As previously noted, the Court believes that there is a substantial likelihood that defendants will not carry their burden.

■ 7. An order enjoining defendants from enforcing § 102.031(3) would not substantially harm them in any manner. No evidence was presented that a single polling place would be lost if a preliminary injunction were issued. On the other hand, as the 1985 version of § 102.031 amply showed, a number of readily available means, short of an outright ban on solicitation, can be employed to protect the integrity of the election process.

8. The public interest would be furthered by enjoining defendants from enforcing the statute. All citizens have an interest in robust debate on public issues. *Clean–Up '84,* 512 F.Supp. at 127. Impeding members of the Committee from asking their fellow citizens to join them in proposing an amendment to the Florida Constitution defeats that interest.

9. The Court has discretion to issue the injunction without requiring security from the Committee. *Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 569 F.2d 300, 302–303 (5th Cir.1978). No bond need be posted at this time. *See Clean–Up '84,* 582 F.Supp. at 127. The Court, however, reserves jurisdiction to reconsider this matter upon appropriate motion by defendants.

Therefore, it is

### ORDERED AND ADJUDGED:

1. That plaintiff's motion for preliminary injunction is hereby granted. Defendants James McMillan, as Sheriff of Duval County, Florida, and Tommie Bell, as Supervisor of Elections for Duval County, Florida, and their officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, including Sheriffs and all Supervisors of Elections in the State of Florida, their officers, agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby prohibited and restrained until further order of this Court from:

(a) enforcing or threatening to enforce Fla.Stat. § 102.031(3) against the peaceful, orderly and non-disruptive solicitation of signatures for plaintiff's initiative petitions during the March 8, 1988, presidential preference primary near any polling place; or

(b) otherwise preventing plaintiff or any of its members from lawfully exercising their constitutional right to solicit signatures in a peaceful, orderly and non-disruptive manner on plaintiff's initiative petitions near any polling place within the State of Florida in the presidential preference primary on March 8, 1988;

2. This injunction shall not in any way restrain those persons whose duty it is to police the polling places from the performance of their duty to protect voters or prospective voters from interference with the free exercise of their right to vote;

3. This injunction shall not in any way affect enforcement of Fla.Stat. § 101.121;

4. This injunction is issued without the requirement of security posted by plaintiff at this time, but the Court reserves jurisdiction to require a bond upon appropriate motion by defendants;

5. This injunction shall remain in full force and effect until the entry of a final judgment, unless prior thereto, the injunction is dissolved by order of the Court upon good cause shown; and

**1544**

6. It shall be the responsibility of attorneys for plaintiff to forthwith send a copy of this order by certified mail or personal service to every Sheriff and Supervisor of Elections in the State of Florida.