538 So.2d 457 (1989)
George FIRESTONE, Etc., Appellant,
v.
NEWS-PRESS PUBLISHING COMPANY, INC., etc., Appellee.
Enid EARLE, etc., et al., Appellants,
v.
NEWS-PRESS PUBLISHING COMPANY, INC., etc., Appellee.
Nos. 72789, 72814.
Supreme Court of Florida.
February 2, 1989.
Rehearing Denied March 14, 1989.
*458 Robert A. Butterworth, Atty. Gen. and Jason Vail, Asst. Atty. Gen., Tallahassee, for George Firestone.
Terrence F. Lenick of Allen, Knudsen, Swartz, DeBoest, Rhoads and Edwards, P.A., Fort Myers, for Enid Earle.
Steven Carta of Simpson, Henderson, Savage & Carta, Fort Myers, for appellee.
Wilson W. Wright, Gen. Counsel, Tallahassee, amicus curiae for State Ass'n of Sup'rs of Elections, Inc.
Barry Richard of Roberts, Baggett, La-Face & Richard, Tallahassee, and Florence Snyder Rivas of Edwards & Angell, Palm Beach, amici curiae for Pensacola News-Journal, Inc., Cape Publications, Inc., Florida Press Ass'n and Florida Soc. of Newspaper Editors; and in joinder, Sunbeam Television Corp., WTWV, Inc., Post-Newsweek Stations, Florida, Inc., Gannett News Service, Palm Beach Newspapers, Inc., Campus Communications, Inc., Tallahassee Democrat, Inc., Markey Pub. Co., Times Pub. Co., Florida Pub. Co., Solares Hill Publications, Inc., Boca Raton News, Inc., Television 12 of Jacksonville, Inc. and Scripps Howard Broadcasting Co.
Gregg D. Thomas, Laurel Lenfestey Helmers, Laura Whiteside and Carol Jean LoCicero of Holland & Knight, Tampa, amici curiae for The Tribune Co., Tampa Television, Inc. and Jacksonville Television, Inc.
PER CURIAM.
Pursuant to article V, section 3(b)(1), of the Florida Constitution, we review the opinion in News-Press Publishing Co. v. Firestone, 527 So.2d 223 (Fla. 2d DCA 1988), wherein the district court of appeal found section 101.121, Florida Statutes (1985), unconstitutional.
This case arose during the primary elections in September 1986. Appellee, a daily newspaper serving Lee County, sent a photographer to the polling place of Frank Mann, a candidate for lieutenant governor. The purpose was to get the familiar election day photograph of a candidate at the polls. Officials at the polls, however, ejected the photographer, citing section 101.121, which made it illegal for any nonvoters to be within fifty feet of a polling place.[1]
The newspaper sued to have the statute declared unconstitutional. The trial court enjoined enforcement of the statute for the *459 general election and took the matter under advisement. After the election, the trial court declared the statute constitutional, and the News-Press appealed. In a split decision, the district court of appeal reversed, finding the statute to be facially invalid for substantial overbreadth. The state now appeals to this Court.[2] We have mandatory jurisdiction under article V, section 3(b)(1), of the Florida Constitution.
A statute is overbroad if it seeks to control or prevent activities properly subject to regulation by means which sweep too broadly into an area of constitutionally protected freedom. State v. Gray, 435 So.2d 816 (Fla. 1983). Restrictions on first amendment rights must be supported by a compelling, governmental interest and must be narrowly drawn to insure that there is no more infringement than is necessary. Winn-Dixie Stores, Inc. v. State, 408 So.2d 211 (Fla. 1981).
In Florida Committee for Liability Reform v. McMillan, 682 F. Supp. 1536 (M.D. Fla. 1988), the court invalidated section 102.031(3), Florida Statutes (1987), which prohibited the solicitation of voters within 150 feet of any polling place. The court reasoned that the statute was overbroad because it had prohibited virtually every form of expression between persons who were within 150 feet of the polling place. The court held that the state had failed to carry the burden of showing that the preservation of the sanctity of polling places justified the 150-foot buffer zone.
Here, the statute only extends to fifty feet beyond the polling room. However, the sweep of the statute within that area is greater than the one in McMillan because it absolutely precludes the presence of nonvoters other than authorized personnel. Moreover, the statute's fifty-foot zone will in some instances extend into public areas. As noted by the district court of appeal:
The fifty-foot radius set by the statute around polling places will undoubtedly, in many cases, encompass sidewalks, city streets and public parks which are traditional public forums for free expression and thus "occup[y] a special position in terms of First Amendment protection," United States v. Grace, 461 U.S. 171, 180, 103 S.Ct. 1702 [1708], 75 L.Ed.2d 736 (1983). See also Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954 [963-964], 83 L.Ed. 1423 (opinion of Roberts, J.) (1939). Such public places "are so historically associated with the exercise of first amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." Hudgens v. NLRB, 424 U.S. 507, 515, 96 S.Ct. 1029 [1034], 47 L.Ed.2d 196, (quoting Food Employees v. Logan Valley Plaza, 391 U.S. 308, 315, 88 S.Ct. 1601 [1607], 20 L.Ed.2d 603, 45 Ohio Op.2d 181 (1968)). Many polling places are in schools, churches and community halls, both public and private, which are likewise commonly used for free expression.
527 So.2d at 225.
At the evidentiary hearing, no witnesses testified of any disturbances having occurred within fifty feet of the polling room. Moreover, the state does not explain why the maintenance of the fifty-foot zone is necessary to prevent interference with the orderly voting process. The state's unsubstantiated concern of potential disturbance is not sufficient to overcome the chilling effect on first amendment rights. Thus, we hold that section 101.121, Florida Statutes, both as it was written and as it was amended in 1987, is overbroad in violation of the first amendment of the United States Constitution.
There remains the question of whether the statute is valid as it pertains to the area within the polling room itself. Whenever possible, a statute should be construed so as not to conflict with the constitution. State v. Gale Distributors, Inc., 349 So.2d 150 (Fla. 1977). Just as federal *460 courts are authorized to place narrowing constructions on acts of Congress, Boos v. Barry, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), this Court may, under the proper circumstances, do the same with a state statute when to do so does not effectively rewrite the enactment. Brown v. State, 358 So.2d 16 (Fla. 1978).
Here, the legislature obviously intended to preclude unauthorized persons from interfering with the voting process. Insofar as the statute pertains to conduct within the voting room itself, we believe that it constitutes a legitimate exercise of the state's police power. Protecting those who seek to exercise their right to vote from distraction, interruption, or harassment is a significant governmental interest. Clean-up '84 v. Heinrich, 759 F.2d 1511 (11th Cir.1985). The incidental restriction on first amendment freedoms within the polling room is no greater than is essential to the furtherance of the government's interest in upholding the sanctity of the electoral process. Thus, we uphold the constitutionality of section 101.121 as it pertains to persons within the polling room. Cf. National Broadcasting Co. v. Cleland, 697 F. Supp. 1204 (N.D.Ga. 1988) (applying a narrowing construction to a statute prohibiting exit polls by reducing the zone of prohibited conduct from 250 feet to 25 feet).
With reference to the suggestion that the broad language of the statute could be applied to exclude the children of voting parents or those accompanying aged or infirm voters, we agree with Judge Schoonover in his dissent when he said:
The provisions of section 101.121, therefore, should not be interpreted to prohibit someone from accompanying an aged or infirm voter to the polls or to prohibit voters from bringing their children with them to the polls rather than hiring a baby sitter. Likewise, the statute should not be interpreted to prevent a doctor from entering the building to treat a voter who needs emergency care or to prevent a person bringing food or beverages to the election workers. These activities are all incidental to the voting process and are sometimes necessary to facilitate someone else's ability to vote.
527 So.2d at 228 (Schoonover, J., dissenting).
We approve the opinion of the district court of appeal insofar as it holds that section 101.121 is unconstitutionally overbroad in its regulation of the fifty-foot zone outside the polling room but disapprove the opinion to the extent that it invalidates section 101.121 in its entirety.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] At the time of the incident, section 101.121 read:

Persons allowed in polling places.  As many electors may be admitted to vote as there are booths available, and no person who is not in line to vote may come within 50 feet of any polling place from the opening to the closing of the polls, except the officially designated watchers, the inspectors, the clerks of election, and the supervisor of elections or his deputy. However, the sheriff, a deputy sheriff, or a city policeman may enter the polling place with permission from the clerk or a majority of the inspectors. Such restrictions shall not apply to commercial businesses or privately owned homes and property which are within 50 feet of the polling place.
Section 104.41, Florida Statutes (1985), made violations of section 101.121 a first-degree misdemeanor, punishable by a fine of up to $1,000 and up to one year in jail.
[2] After this case was filed the statute was amended and now proscribes unauthorized personnel or nonvoters from being within fifty feet of a polling room. Because we are not persuaded that there is any constitutional difference in the change, when referring to section 101.121 we shall hereafter use the current terminology of "polling room."