**Mary Rebecca FREEMAN,
Plaintiff–Appellant,**

v.

**Charles W. BURSON,
Defendant–Appellee.**

Supreme Court of Tennessee,
at Nashville.

Oct. 1, 1990.

John E. Herbison, Nashville, for plaintiff-appellant.

Charles W. Burson, Atty. Gen. and Reporter, defendant-appellee pro se and Michael W. Catalano, Deputy Atty. Gen., Nashville, for defendant-appellee.

## OPINION

DROWOTA, Chief Justice.

Tenn.Code Ann. § 2–7–111 prohibits the solicitation of votes and the display of campaign materials within a 100–foot radius of polling places on election day. Tenn.Code Ann. § 2–19–119 fixes criminal penalties for violations of Section 2–7–111. Plaintiff brought suit in Davidson County Chancery Court, seeking a permanent injunction against enforcement of these statutes and a declaratory judgment that the statutes are unconstitutional under both the United States and Tennessee Constitutions. The Chancellor held the statutes constitutional and dismissed Plaintiff's suit. For the following reasons, we now reverse the Chancellor's judgment.

Plaintiff, Mary Rebecca Freeman, is a resident of Davidson County who has served on a local party executive committee many times. She testified that she has been a candidate for office, has managed local campaigns, and has worked actively in state-wide elections.

Plaintiff testified that personal solicitation and other election place campaigning methods are especially important in district-specific races because mass media is prohibitively expensive and is ineffective to target small locales and minor issues. Plaintiff stated that the 100–foot ban on personal solicitation and display or distribution of campaign materials has limited her ability to communicate with voters. Her proof showed that in some instances the 100–foot boundary extends onto the sidewalks and streets adjacent to the polling places. In other instances it permits some

campaign activity on the grounds of the polling place if the grounds are sufficiently large. Plaintiff also testified that she had seen some commercial solicitation occur at polling places.

On behalf of the State, Constance Ann Alexander, the Davidson County Registrar and former executive secretary for the election commission, testified about the conduct of elections. She stated that she had personally observed campaign workers thrusting handbills into the windows of voters' cars on the polling premises. She had never observed commercial or religious solicitation within the 100–foot boundary. She testified additionally that she was aware the 100–foot boundary sometimes extended into the street.

In Ms. Alexander's view, elimination of the boundary would result in disruption and confusion, especially in larger and more heated elections. She testified that without the 100–foot boundary there would be a greater possibility for error in tabulating votes and in keeping track of the voters. Additionally, voting locations would be overcrowded, and people would campaign inside polling places. Ms. Alexander's specific testimony about confusion, error, and disruption, however, related to the numbers of persons present in the polling place itself.

In a memorandum opinion filed April 26, 1989, the Chancellor upheld the challenged statutes, finding that Section 2–7–111 was a content-neutral, reasonable time, place, and manner restriction; that the 100–foot boundary served a compelling state interest in protecting voters from interference, harassment, and intimidation during the voting process; and that there was an alternative channel for Plaintiff to exercise her free speech rights outside the 100–foot boundary. Because the constitutionality of statutes are the sole determinative issues, Plaintiff's appeal from the Chancellor's judgment is directly to this Court pursuant to Tenn.Code Ann. § 16–4–108.

Plaintiff argues that the statutes at issue facially violate the First and Fourteenth Amendments to the United States Constitution and Article I, § 19, Article I, § 8, and Article XI, § 8 of the Tennessee Constitution. The principal statute challenged in this instance, Tenn.Code Ann. § 2–7–111, states in relevant part:

(a) The officer of elections shall have the sample ballots, voting instructions, and other materials which are to be posted placed in conspicuous positions inside the polling place for the use of voters. The officer shall measure off one hundred feet (100′) from the entrances to the building in which the election is to be held and place boundary signs at that distance. Provided, however, in any county having a population of:

| not less than | nor more than |
| --- | --- |
| 13,600 | 13,610 |
| 16,350 | 16,450 |
| 24,590 | 24,600 |
| 28,500 | 28,560 |
| 41,800 | 41,900 |
| 50,175 | 50,275 |
| 54,375 | 54,475 |
| 56,000 | 56,100 |
| 67,500 | 67,600 |
| 77,700 | 77,800 |
| 85,725 | 85,825 |

all according to the 1980 federal census or any subsequent federal census, the officer shall measure off three hundred feet (300′) from the entrances to the building in which the election is to be held and place boundary signs at that distance.

(b) Within the appropriate boundary as established in subsection (a), and the building in which the polling place is located, the display of campaign posters, signs or other campaign materials, and solicitation of votes for or against any person or political party or position on a question are prohibited. No campaign posters, signs or other campaign literature may be displayed on or in any building or on the grounds of any building in which a polling place is located.[1]

(c) The officer of elections shall have each official wear a badge with his name and official title.

1. The remaining text of the statute is as follows:
   2–7–111. Posting of sample ballots and instructions—Arrangement of polling place—Restrictions....

The above statute regulates political speech, which is the most highly protected form of speech. "Indeed, the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *EU v. San Francisco City Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989). *See also Bemis Pentecostal Church v. State*, 731 S.W.2d 897, 903 (1987). The State argues, though, that Section 2–7–111 is a constitutionally valid time, place, and manner restriction of political speech.

The State may enforce reasonable time, place, and manner regulations of expressive conduct as long as the restrictions "are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983) (quoting *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). In order for Section 2–7–111 to qualify as a reasonable time, place, and manner restriction, the State must first show that the statute is content-neutral. The State insists that the statute is content-neutral because it does not discriminate against speakers or ideas and furthers an important governmental interest—the integrity and orderliness of the voting process—unrelated to the restriction of communication. *See Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). While the State admits that the statute on its face criminalizes only political speech and political activity, the State points out that the statute does not discriminate on the basis of political viewpoints. The State contends that the rationale of *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) is controlling.

*City of Renton* dealt with an ordinance which prohibited any "adult motion picture theatre" from locating within 1,000 feet of any residential zone, single or multiple-family dwelling, church, park, or school. The U.S. Supreme Court upheld the ordinance as content-neutral because "[t]he ordinance is aimed not at the *content* of the films shown at 'adult motion picture theatres,' but rather at the *secondary effects* of such theatres on the surrounding community." *Id* at 47, 106 S.Ct. at 929. The State insists that the statute in question is likewise aimed at the "secondary effects" of political activity at the polling places—crowds, confusion, intimidation of voters, etc.—rather than at the speech itself.

We reject the State's argument. The Court in *City of Renton* limited its opinion to businesses that purvey sexually explicit materials and distinguished that type of expression as one for which society's interest is of a different and lesser magnitude than society's interest in protecting the kind of political expression at issue in the instant case. *See City of Renton*, 475 U.S. at 49, n. 2, 106 S.Ct. at 929, n. 2. In contrast to the restrictive zoning of pornography outlets, the statutes challenged in this case limit political expression, which "is at the core of our electoral process and of the First Amendment freedoms[,]" *Williams v. Rhodes*, 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968), "an area in which the importance of First Amendment protection is 'at its zenith.'" *Meyer v. Grant*, 486 U.S. 414, 425, 108 S.Ct. 1886, 1894, 100 L.Ed.2d 425 (1988). We note that the Supreme Court avoided the *Renton* formula when it next considered a political speech case. *See Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). We note also that at least two courts have refused to apply *Renton* in cases involving political activity near polling places. *See Finzer v. Barry*, 798 F.2d 1450, 1469, n. 15 (D.C.Cir.1986), *cert. granted sub nom.*

(d) With the exception of counties having a metropolitan form of government, any county having a population over six hundred thousand (600,000) according to the 1970 federal census or any subsequent federal census, and counties having a population of between two hundred fifty thousand (250,000) and two hundred sixty thousand (260,000) by the 1970 census, any county may, by private act, extend the one hundred dred foot (100') boundary provided in this section. [Acts 1972, ch. 740, § 1; T.C.A., § 2–711; Acts 1980, ch. 543, §§ 1, 2; 1987, ch. 362, §§ 1, 2, 4.]

*Boos v. Barry,* 479 U.S. 1083, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987); *Florida Committee For Liability Reform v. McMillan,* 682 F.Supp. 1536 (M.D.Fla.1988).

Even if the *Renton* analysis can be applied to political expression, it is not available to defend the statutes in question in this case. The lower level of scrutiny applied to content-neutral regulation is available only if the asserted governmental interest is unrelated to the suppression of speech. *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). However, the State put on no proof that the display or distribution of campaign materials or the solicitation of votes near polling places has a different effect from that of the communication of other messages at polling places. In fact, the State's witness, Ms. Alexander, admitted on cross-examination that if there were persons soliciting for charitable organizations inside the 100–foot boundary that would pose the same kind of problems as persons soliciting votes inside that boundary. We, therefore, find that Section 2–7–111 is content-based because it regulates a specific subject matter, the solicitation of votes and the display or distribution of campaign materials, and a certain category of speakers, campaign workers.

Regulations which restrain speech on the basis of its content presumptively violate the First Amendment. *National Broadcasting Co., Inc. v. Cleland,* 697 F.Supp. 1204, 1211 (N.D.Ga.1988); *City of Renton,* 475 U.S. at 46–47, 106 S.Ct. at 728–29. Such a regulation may be upheld only if the State can prove that "the burden placed on free speech rights is justified by a compelling state interest. The least intrusive means must be utilized by the State to achieve its goals and the means chosen must bear a substantial relation to the interest being served by the statute in question." *Bemis,* 731 S.W.2d at 903.

The State's rationale for the 100–foot "buffer zone" around polling places is the prevention of interference with voting, confusion, mistakes, and overcrowding at polling places. States certainly have an interest in maintaining peace, order and decorum at the polls and "preserving the integrity of their electoral processes." *Brown v. Hartlage,* 456 U.S. 45, 52, 102 S.Ct. 1523, 1528, 71 L.Ed.2d 732 (1982); *Mills v. Alabama,* 384 U.S. 214, 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966). The State unquestionably has shown a compelling interest in banning solicitation of voters or distribution of campaign materials *within the polling place itself.*

Tenn.Code Ann. § 2–7–111, however, is not narrowly tailored to advance the State's interest. The statute at issue prohibits all campaign activity from an arc of 100 feet from *every* entrance to the polling places. In many instances this arc extends onto public streets and sidewalks. The State has not shown a compelling interest in the 100–foot radius. The specific testimony of the State's witness about confusion, error, overcrowding, etc. concerned the numbers of persons present in the polling place itself, not the numbers of persons outside the polls.

Several other courts have dealt with similar attempts to insulate the environs of the polling place from political speech. With one exception these regulations have been held to violate the First Amendment, either because they were overbroad in reaching onto private property or because they insufficiently advanced the asserted governmental interest. *See Daily Herald Co. v. Munro,* 838 F.2d 380 (9th Cir.1988) (ban on exit polling within 300 feet of polling place); *Committee for Sandy Springs, Georgia, Inc. v. Cleland,* 708 F.Supp. 1289 (N.D.Ga.1988) (ban on soliciting signatures for petition within 250 feet of polling place); *Florida Committee for Liability Reform v. McMillan,* 682 F.Supp. 1536 (M.D.Fla.1988) (ban on solicitation for any purpose within 150 feet of polling place); *CBS Inc. v. Smith,* 681 F.Supp. 794 (S.D. Fla.1988) (ban on exit polling within 150 feet); *NBC v. Cleland,* 697 F.Supp. 1204 (N.D.Ga.1988) (250 foot boundary for solicitation, distribution of campaign literature, and exit polling); *National Broadcasting Co., Inc. v. Colburg,* 699 F.Supp. 241 (D.Mont.1988); *Firestone v. News Press Publishing Co., Inc.,* 538 So.2d 457 (Fla.

1989) (exclusion of non-voters from area within 50 feet of polling room).

In *Florida Committee for Liability Reform v. McMillan*, 682 F.Supp. 1536 (M.D. Fla.1988), the district court granted a preliminary injunction against enforcement of a statute prohibiting solicitation within 150 feet of polling places, holding that the statute was overbroad with respect to subject matter and geographic application. *Id.* Addressing the stated government interest of preventing voter harassment, the Court concluded:

> ... if the quality of this interest is merely the offense suffered by a voter who approaches the polls only to be approached by a petitioner, this brief exposure to grassroots democratic process, however unpalatable to some individuals, cannot justify a restriction on speech when the offensive activity can be avoided readily by communicating a declination of interest to the petitioner.

*Id.* at 1542.

Likewise, if the State's interest in preventing voter interference in the case at bar consists only of shielding voters from annoying campaign workers armed with cheap ball point pens and fingernail files embossed with a candidate's name, this interest cannot justify an infringement upon free speech rights. Furthermore, Tenn. Code Ann. §§ 2–19–101 [2] and 2–19–115 [3] adequately prohibit voter interference and intimidation.

Moreover, the statute is not the least restrictive means to serve the State's interests. A boundary which precludes solicitation near the entrances and exits of the polling place, thereby protecting the voting lines from congestion or undue disruption, but which permits solicitation in other yet somewhat less proximate places, might perhaps pass constitutional muster. We note that one court has held that a 25–foot boundary is valid to prevent congestion and disruption at the entrances to the polling place. *See NBC v. Cleland,* 697 F.Supp. 1204 (N.D.Ga.1988).

However, such a limited statute, carefully drafted to protect the rights of the speakers while furthering the State's compelling interests, is not before this Court today. Accordingly, we reverse the judgment of the Chancellor and hold that Tenn. Code Ann. §§ 2–7–111 and 2–19–119 are constitutionally invalid. The costs of appeal are taxed to the Appellee.

COOPER, O'BRIEN and DAUGHTREY, JJ., concur.

FONES, J., dissents with separate opinion.

FONES, Justice, dissenting.

I respectfully dissent. The majority says that the state *unquestionably* has a compelling interest in preserving the integrity of the electoral process that would support banning solicitation of votes and distribution of campaign materials within the polling place itself. They seem to say that a ban of 25 feet from the entrance would probably pass constitutional muster. However, a 100 foot ban places an unpalatable,

---

2. **2–19–101. Interfering with nominating meeting or election.**—A person commits a misdemeanor if he:

(1) Breaks up or attempts to break up any legally authorized political party nominating meeting or any election by force or violence;

(2) Assaults or attempts to assault the persons conducting the meeting or the election officials;

(3) Destroys or carries away or attempts to destroy or carry away a ballot box or voting machine; or

(4) Uses force or violence in any other way to prevent the fair and lawful conduct of the nominating meeting or election. [Acts 1972, ch. 740, § 1; T.C.A., § 2–1901.]

3. **2–19–115. Violence and intimidation to prevent voting.**— It is a misdemeanor for any person, directly or indirectly, by himself or through any other person:

(1) By force or threats to prevent or endeavor to prevent any elector from voting at any primary or final election;

(2) To make use of any violence, force or restraint, or to inflict or threaten the infliction of any injury, damage, harm or loss; or

(3) In any manner to practice intimidation upon or against any person in order to induce or compel him to vote or refrain from voting, to vote or refrain from voting for any particular person or measure, or on account of such person having voted or refrained from voting in any such election. [Acts 1972, ch. 740, § 1; T.C.A., § 2–1915.]

unjustified, unconstitutional restriction on free speech, according to the majority.

When a constitutional attack is made upon a legislative act, the Court is required to indulge every presumption in favor of its validity and resolve any doubt in favor of, rather than against, the constitutionality of the act. *Dorrier v. Dark*, 537 S.W.2d 888 (Tenn.1976); *Memphis Publishing Co. v. City of Memphis*, 513 S.W.2d 511 (Tenn. 1974) and *Black v. Wilson*, 182 Tenn. 623, 188 S.W.2d 609 (1945). The majority has totally ignored this presumption that binds this Court as firmly as any principle of law in the books.

The majority says that somewhere in the space of 75 feet a ban on vote solicitation becomes unconstitutional. It takes approximately 15 seconds to walk 75 feet. If the electorate of Tennessee is dependent upon the free speech available in the last 15 seconds before they enter the polling place, to cast an informed ballot, God help us.

I would indulge the presumption of validity this legislative act is entitled to receive in this Court and uphold the constitutionality of the 100 foot ban.