The Honorable Art Givens State Representative 300 Spring Building #1004 Little Rock, Arkansas 72201
Dear Representative Givens:
This is in response to your request for an opinion on the following questions:
 1. Does the provision of A.C.A. § 7-1-103(9) (Cum. Supp. 1991), which reads as follows: `No officer of election shall do any electioneering on any election day. No person shall hand out or distribute or offer to hand out or distribute any campaign literature or any literature regarding any candidate or issue on the ballot, solicit signatures on any petition, solicit contributions for any charitable or other purpose, or do any electioneering of any kind whatsoever within one hundred feet (100') of any polling place on election day,' violate Amendment 7 (initiative and referendum), which provides in part: `No law shall be passed to prohibit any person or persons from giving or receiving compensation for circulating petitions, nor to prohibit the circulation of petitions, nor in any manner
interfering with the freedom of the people in procuring petitions . . .' `no legislation shall be enacted to restrict, hamper or impair the exercise of the rights herein reserved to the people?' [Emphasis yours.]
 2. Is the legislature prohibited from enacting a statute that prohibits a citizen from soliciting signatures on any petition within one hundred feet (100') of a polling place on election day, because the constitution has previously stated that `[n]o law shall be passed to prohibit any person from circulating petitions . . . nor in any manner interfering with the freedom of the people in procuring petitions . . .?
In response to your first question, it is my opinion that the statute you have cited, A.C.A. § 7-1-103(9), is at least constitutionally suspect under Amendment 7 to the Arkansas Constitution, and under the "free speech" provisions of theFirst Amendment to the United States Constitution. The United States Supreme Court, however, has accepted certiorari in a case containing a very similar issue, and will soon provide some controlling precedent in the area. See Freeman v. Burson,802 S.W.2d 210 (Tenn. 1990), cert. granted, Burson v. Freeman,
U.S., 111 S.Ct. 1578, 113 L.Ed2d 644, 59 USLW 3483 (1991). The conclusions contained in this opinion may need to be modified depending upon the outcome of that decision.
In addressing your question, reference must be had not only to the provision of Amendment 7 to which you cite, but also to theFirst Amendment to the United States Constitution, which has been made applicable to the states. Duncan v. Louisiana,391 U.S. 145 (1968) and Gitlow v. New York, 268 U.S. 652 (1925). The collecting of signatures on initiative or referendum petitions is a form of "speech" protected by the First Amendment. SeeUnited States v. Cruikshank, 92 U.S. 542 (1875), morerecently Clean-Up '84 v. Heinrich, 759 F.2d 1511 (11th Cir. 1985) and Opinion No. 84-161. This office has previously opined that our Arkansas Supreme Court, if ever faced with the question, would construe the particular provision of Amendment 7 to which you cite, as "coextensive" with the First Amendment:
 That is, [Amendment 7] provide[s] protection against governmental interference with free speech and petition rights in public forums subject to reasonable time, place and manner restrictions. It is my opinion that our Arkansas Supreme Court would not construe the language of Amendment 7 ('no law shall be passed to prohibit the circulation of petitions, nor in any manner interfering with the freedom of the people in procuring petitions') as abrogating the right of [the state] to fashion reasonable time, place and manner restrictions. That is, it is my opinion that the court would not construe that language as granting an unlimited right of the people of Arkansas to collect signatures [in public forums] in any area, at any time, and in any manner they wished, no matter what the disruption to [state] purposes would be.
Opinion No. 90-221 at 4-5.
It is thus my opinion that Amendment 7 is not a flat prohibition against the enactment of any reasonable "time, place, and manner" restrictions, but rather, the language above only prevents "unwarranted" restrictions, as the title of the relevant section indicates ("Unwarranted Restrictions Prohibited"). Some restrictions thus may be "warranted." It is my opinion that our Arkansas Supreme Court would find restrictions "warranted" if they meet the test set out by the United States Supreme Court under a First Amendment analysis. As will be seen, this is an extremely exacting test, nonetheless.
Under the First Amendment, "a state may enforce reasonable time, place, and manner regulations of expressive conduct as long as the restrictions `are content neutral, are narrowly tailored to serve a significant government interest, and leave open alternative channels of communication.'" Freeman v. Burson,supra, citing United States v. Grace, 461 U.S. 171 (1983),quoting Perry Education Assn. v. Perry Local Educators'Assn., 460 U.S. 37 (1983). Regulations which restrain speech on the basis of its content presumptively violate theFirst Amendment. Such a regulation may be held valid only if it is narrowly tailored to accomplish a compelling governmental interest. National Broadcasting Co., Inc. v. Cleland,697 F. Supp. 1204 (N.D. Ga. 1988), citing City of Renton v. PlaytimeTheatres, Inc., 475 U.S. 41 (1986).
It appears that every court faced with the question has struck down statutes which place distance limitations on the collecting of signatures or other protected First Amendment activity near polling places. See e.g. Clean-Up '84 v. Heinrich,supra, (300 feet limitation on collecting signatures unconstitutional on its face); Committee for Sandy Springs,Georgia v. Cleland, 708 F. Supp. 1289 (N.D. Ga. 1988), (granting preliminary injunction on 250 feet limitation against signature collecting because unconstitutional on its face); FloridaCommittee for Liability Ref. v. McMillian, 682 F. Supp. 1536
(M.D. Fla. 1988), (granting preliminary injunction against 150 feet limitation on signature collecting because invalid on its face); National Broadcasting Co., Inc. v. Cleland,697 F. Supp. 1204 (N.D. Ga. 1988), (holding statute prohibiting "exit polling" and signature collecting with 250 feet of polling place invalid and enjoining statute's operation beyond 25 feet); CBS, Inc.v. Smith, 681 F. Supp. 794 (S.D. Fla. 1988), (holding 150 feet limitation on "exit polling" and signature collecting invalid);Daily Herald Co. v. Munro, 838 F.2d 380 (9th Cir. 1988), (holding 300 feet "exit polling" limitation unconstitutional on its face); National Broadcasting Co., Inc. v. Colburg,699 F. Supp. 241 (D.Mont. 1988), (granting preliminary injunction against 200 feet limitation on "exit polling"); News-PressPublishing Company, Inc., v. Firestone, 527 So.2d 223 (Fla. 1988), (holding unconstitutional on its face a statute which prohibited anyone other than electors or election officials from being within a 50 foot radius of the polling place); and Freemanv. Burson, supra, (holding a 100 feet limitation on electioneering unconstitutional under the First Amendment;cert. granted by the U.S. Supreme Court).
Although the courts in many of these cases found a "compelling" governmental interest in maintaining the sanctity and decorum of the polls and in encouraging the use of the franchise, (see,e.g., National Broadcasting v. Cleland, supra), virtually all the courts cited above ruled that the restrictions were "overbroad." Each of the courts held that the statutes in question, (which amount to time, place and manner restrictions), were not "narrowly tailored" to address the state's interest as required to pass constitutional muster. Many of the courts noted that radius of the distance limitations, in some instances, would include sidewalks and public streets, which are traditional public forums. Freeman v. Burson, supra, News-PressPublishing Co. Inc. v. Firestone, supra, CBS, Inc. v. Smith,supra. They also held that the state could use less restrictive means to achieve its objectives.
In light of all these cases, and in light of the construction I believe our Arkansas Supreme Court would place on Amendment 7, it is my opinion that A.C.A. § 7-1-103(9) is constitutionally suspect. Of course, if the United States Supreme Court reaches a different conclusion in Burson v. Freeman, supra, the conclusions in this opinion may have to be altered.
In response to your second question (whether Amendment 7 prohibits the enactment of any statute which prohibits the collecting of signatures within 100 feet of a polling place), it is my opinion that the answer to your question is "yes," unless the statute is extremely narrowly tailored to address the state's interest in protecting the sanctity and decorum of the polling places. It has been held that the state does not have a sufficient interest in merely protecting voters from annoyance. As was stated in Florida Committee for Liability Ref. v.McMillian, supra:
 . . . if the quality of this interest is merely the offense suffered by a voter who approaches the polls only to be approached by a petitioner, this brief exposure to grassroots democratic process, however unpalatable to some individuals, cannot justify a restriction on speech when the offensive activity can be avoided readily by communicating a declination of interest to the petitioner.
682 F. Supp. at 1542. See also, Freeman v. Burson, supra.
Therefore, in order for a statute regulating the distance within which petitioners may solicit signatures to pass constitutional muster, it must be narrowly tailored to address the actual concern of the state in maintaining order of polling places and of protecting the public's fundamental right to vote. At least one court has "rehabilitated" an invalid 250 feet limitation by enjoining its operation beyond 25 feet. National BroadcastingCompany, Inc. v. Cleland, supra. At least one court, then, believes that a twenty-five foot limitation would be constitutional. Other courts have refused to rehabilitate statutes in such a manner, based upon considerations of judicial restraint. National Broadcasting Co., Inc. v. Colburg, supra.
Again, a more definitive idea of what type of statute will meet constitutional standards will be possible after the United States Supreme Court has spoken on the issue.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh